[884 NE2d 1044, 855 NYS2d 45]

Vigilant Insurance Company et al., Appellants, v The Bear Stearns Companies, Inc., Respondent.

Argued February 6, 2008; decided March 13, 2008

**POINTS OF COUNSEL**

*DLA Piper US LLP,* New York City (*Joseph G. Finnerty III, Arthur F. Fergenson* and *Howard S. Schrader* of counsel), and *Bondas, Skarzynski, Walsh & Black, LLC* (*James A. Skarzynski, Evan Shapiro* and *Eleftherios Stefas* of counsel) for appellants. I. The First Department violated the Supremacy Clause of the United States Constitution by nullifying a federal court final judgment. (*Frew v Hawkins,* 540 US 431; *Hunt v Mobil Oil Corp.,* 557 F Supp 368; *Washington v Washington State Commercial Passenger Fishing Vessel Assn.,* 443 US 658; *Delaware Val. Citizens' Council for Clean Air v Commonwealth of Pa.,* 755 F2d 38; *Central Nat. Bank v Stevens,* 169 US 432; *Riggs v Johnson County,* 6 Wall [73 US] 166; *Stoll v Gottlieb,* 305 US 165; *Deposit Bank v Frankfort,* 191 US 499; *Matter of New York State Commr. of Correction v Gulotta,* 194 AD2d 540; *Jamaica Hosp. v Blum,* 68 AD2d 1.) II. The First Department misapplied basic principles of contract interpretation to the insurance policies' "investment banking" exclusion. (*Mount Vernon Fire Ins. Co. v Creative Hous.,* 88 NY2d 347; *Silva v Utica First Ins. Co.,* 303 AD2d 487; *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.,* 51 NY2d 506; *People v Shapiro,* 50 NY2d 747; *Bailey v AGR Realty Co.,* 260 AD2d 322; *State of New York v Home Indem. Co.,* 66 NY2d 669; *Newin Corp. v Hartford Acc. & Indem. Co.,* 62 NY2d 916; *Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169; *Matter of Ideal Mut. Ins. Co. [Superintendent of Ins. of State of N.Y.—Harbour Assur. Co. of Bermuda],* 231 AD2d 59; *Tierra Props. v Lloyd's Ins. Co.,* 206 AD2d 288.) III. The court below erred in not holding that Bear

Stearns' failure to obtain the insurers' consent prior to its settlement with the regulators voided coverage under the policies. (*Argo Corp. v Greater N.Y. Mut. Ins. Co.*, 4 NY3d 332; *Royal Zenith Corp. v New York Mar. Mgrs.*, 192 AD2d 390; *AIU Ins. Co. v Valley Forge Ins. Co.*, 303 AD2d 325; *Travelers Indem. Co. v Eitapence*, 924 F2d 48; *Valentino v State of New York*, 48 AD2d 15; *Silverman v Member Brokerage Servs.*, 298 AD2d 381; *Winston v Mediafare Entertainment Corp.*, 777 F2d 78; *Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363; *Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397; *Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584.) IV. The trial court and the First Department erred in not ruling that Bear Stearns' future payments for "independent research" and "investor education" programs are not "loss" covered by the policies. (*Loblaw, Inc. v Employers' Liab. Assur. Corp.*, 57 NY2d 872; *Breed v Insurance Co. of N. Am.*, 46 NY2d 351; *Roundabout Theatre Co. v Continental Cas. Co.*, 302 AD2d 1; *Continental Ins. Cos. v Northeastern Pharm. & Chem. Co., Inc.*, 842 F2d 977; *Mazzola v County of Suffolk*, 143 AD2d 734; *2619 Realty v Fidelity & Guar. Ins. Co.*, 303 AD2d 299; *Avondale Indus., Inc. v Travelers Indem. Co.*, 887 F2d 1200; *Ellett Bros., Inc. v United States Fid. & Guar. Co.*, 275 F3d 384; *Maryland Cas. Co. v Armco, Inc.*, 822 F2d 1348.)

Proskauer Rose LLP, New York City (*John H. Gross, Seth B. Schafler, Francis D. Landrey, Matthew J. Morris* and *Sarah Reisman* of counsel), for respondent. I. The insurers' Supremacy Clause argument was not preserved and is without merit. (*Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Motor Veh. Mfrs. Assn. of U.S. v State of New York*, 75 NY2d 175; *Lichtman v Grossbard*, 73 NY2d 792; *Matter of Barbara C.*, 64 NY2d 866; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Capitol Records, Inc. v Naxos of Am., Inc.*, 4 NY3d 540; *Department of Treasury v Fabe*, 508 US 491; *SEC v National Securities, Inc.*, 393 US 453; *Munich Am. Reins. Co. v Crawford*, 141 F3d 585; *Washington v Washington State Commercial Passenger Fishing Vessel Assn.*, 443 US 658.) II. There are triable issues of fact as to whether the payment labeled as disgorgement is a loss as that term is defined in the policy. (*Zuckerman v City of New York*, 49 NY2d 557; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Lipsky v Commonwealth United Corp.*, 551 F2d 887; *Cambridge Fund, Inc. v Abella*, 501 F Supp 598; *Singleton Mgt. v Compere*, 243 AD2d 213; *Matter of Halyalkar v Board of Regents of State of N.Y.*, 72 NY2d 261; *Matter of Becker v DeBuono*, 239 AD2d 664; *Allstate Ins. Co. v Zuk*, 78 NY2d 41; *Public Serv. Mut. Ins. Co. v*

*Goldfarb,* 53 NY2d 392; *Messersmith v American Fid. Co.,* 232 NY 161.) III. The Appellate Division correctly granted summary judgment to Bear Stearns on the investment banking issue. (*Belt Painting Corp. v TIG Ins. Co.,* 100 NY2d 377; *RJC Realty Holding Corp. v Republic Franklin Ins. Co.,* 2 NY3d 158; *242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co.,* 31 AD3d 100; *Uribe v Merchants Bank of N.Y.,* 91 NY2d 336; *Metropolitan Life Ins. Co. v Noble Lowndes Intl.,* 84 NY2d 430; *State of New York v Home Indem. Co.,* 66 NY2d 669; *Newin Corp. v Hartford Acc. & Indem. Co.,* 62 NY2d 916; *Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169; *Ender v National Fire Ins. Co. of Hartford,* 169 AD2d 420; *Mount Vernon Fire Ins. Co. v Creative Hous.,* 88 NY2d 347.) IV. The Appellate Division correctly granted summary judgment to Bear Stearns on whether the policy covers payments for investor education and independent research. (*Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470; *Westview Assoc. v Guaranty Natl. Ins. Co.,* 95 NY2d 334; *Mazzuoccolo v Cinelli,* 245 AD2d 245; *S.E.C. v Lorin,* 869 F Supp 1117; *ZKZ Assoc. v CNA Ins. Co.,* 89 NY2d 990; *Woodson v American Tr. Ins. Co.,* 281 AD2d 282; *Yoi-Lee Realty Corp. v 177th St. Realty Assoc.,* 208 AD2d 185; *Maryland Cas. Co. v Armco, Inc.,* 822 F2d 1348; *Ellett Bros., Inc. v United States Fid. & Guar. Co.,* 275 F3d 384; *Gerrish Corp. v Universal Underwriters Ins. Co.,* 947 F2d 1023.) V. There are triable issues of fact concerning the settlement issue. (*Isadore Rosen & Sons v Security Mut. Ins. Co. of N.Y.,* 31 NY2d 342; *Prudential Lines v Firemen's Ins. Co. of Newark, N.J.,* 91 AD2d 1; *Texaco A/S [Denmark] v Commercial Ins. Co. of Newark, N.J.,* 160 F3d 124; *Luria Bros. & Co., Inc. v Alliance Assur. Co., Ltd.,* 780 F2d 1082; *Silverman v Member Brokerage Servs.,* 298 AD2d 381; *Hover v National Grange Ins. Co.,* 20 AD2d 178; *Winston v Mediafare Entertainment Corp.,* 777 F2d 78; *Joseph Martin, Jr., Delicatessen v Schumacher,* 52 NY2d 105; *Schlegel Mfg. Co. v Cooper's Glue Factory,* 231 NY 459; *Souveran Fabrics Corp. v Virginia Fibre Corp.,* 37 AD2d 925.)

*Jacob H. Stillman,* Washington, D.C., and *Mark Pennington* for Securities and Exchange Commission, amicus curiae. I. The U.S. Securities and Exchange Commission's complaint alleged that Bear Stearns failed to guard against conflicts of interest that threatened the independence of its securities analysts and sought disgorgement of the ill-gotten gains arising from this misconduct. II. Bear Stearns agreed to pay disgorgement, and the District Court entered a judgment ordering it to do so. III. Despite the plain language of the complaint of the consent to

judgment and of the final judgment, Bear Stearns urged in the Appellate Division that it did not pay disgorgement, and that the US Securities and Exchange Commission used a "legal fiction" to obtain compensatory damages.

## OPINION OF THE COURT

GRAFFEO, J.

In this insurance dispute, we conclude that the insured breached a policy provision obligating it to obtain the consent of its liability carriers before settling claims in excess of $5 million. We therefore reverse the order of the Appellate Division denying the insurers' motion for summary judgment.

Defendant Bear Stearns Companies, Inc., a financial services firm, was issued a primary professional liability insurance policy by plaintiff Vigilant Insurance Company that provided coverage for losses resulting from claims made against the insured for its wrongful acts. The Vigilant policy afforded $10 million in coverage after Bear Stearns exhausted its $10 million self-insured retention. Plaintiffs Federal Insurance Company and Gulf Insurance Company further provided Bear Stearns an additional $40 million in coverage under follow-form excess liability policies.* Pursuant to the terms of these insurance contracts, Bear Stearns agreed not to settle any claim in excess of $5 million without first obtaining the consent of its insurers. In addition, the policies excluded coverage for claims arising from investment banking work undertaken by Bear Stearns.

In early 2002, the U.S. Securities and Exchange Commission (SEC), National Association of Securities Dealers (NASD) and New York Stock Exchange (NYSE), along with state attorneys general, initiated a joint investigation into the practices of research analysts working at financial services firms and the potential conflicts that could arise from the relationship between research functions and investment banking objectives. The investigation focused on allegations that research analysts employed at 10 major financial institutions, including Bear Stearns, were improperly influenced by investment banking concerns. Toward the end of 2002, the regulators met separately

---

* The Travelers Indemnity Company is the successor-in-interest by merger to Gulf Insurance Company. Bear Stearns was also covered by additional excess policies not relevant to this appeal.

with each of the investigated firms to discuss a global settlement.

On December 20, 2002, Bear Stearns signed a settlement-in-principle document, acknowledging that each regulator would commence an action or administrative proceeding against it and that Bear Stearns would subsequently "consent to the action and the relief sought without admitting or denying the allegations." Bear Stearns further agreed to pay $50 million in retrospective relief, plus $25 million to fund independent research and $5 million for investor education. The document indicated that the terms of the settlement were subject to approval by the SEC and other regulators. Also taking place on December 20, 2002, the regulators issued a press release announcing they had achieved an industry-wide settlement with the 10 financial institutions that would result in payments of more than $1.4 billion in penalties, restitution and education funds.

A few months later, Bear Stearns executed a consent agreement in which it acceded to the entry of a final judgment in the SEC's federal lawsuit against Bear Stearns in the United States District Court for the Southern District of New York. Under the terms of the "Consent of Defendant Bear, Stearns & Co. Inc.," dated April 21, 2003, Bear Stearns consented to be permanently enjoined from violating a number of NASD and NYSE rules and agreed to pay a total amount of $80 million allocated as follows: $25 million as a penalty, $25 million in disgorgement, $25 million for independent research and $5 million for investor education. Of the $50 million in retrospective relief, $25 million was designated to resolve the SEC action and related proceedings instituted by the NASD and NYSE, while the remaining $25 million covered the settlement of proceedings with various state regulators. Bear Stearns explicitly agreed not to seek insurance coverage for the $25 million penalty. The agreement also allowed the SEC to present a final judgment to the federal court "for signature and entry without further notice" to Bear Stearns.

Three days after executing the settlement agreement, Bear Stearns sent letters to its insurers requesting their consent to the settlement. The insurers disclaimed coverage and commenced this declaratory judgment action seeking a declaration that the $45 million sought by Bear Stearns (after depletion of the $10 million self-insured retention) was not covered by the policies.

In October 2003 the federal District Court found the Bear Stearns settlement to be "fair, adequate, and in the public interest," and entered a final judgment ordering Bear Stearns to pay the agreed-upon sum of $80 million. Shortly thereafter, the insurers moved for summary judgment in this declaratory judgment action. In support of their motion, the insurers argued that they were not liable for all or part of the $45 million sought by Bear Stearns for four reasons. First, they asserted that Bear Stearns could not recover any of the settlement because it had breached the policy provision obligating it to obtain the insurers' consent before settling the case. Second, they claimed that the investment banking exclusion precluded recovery of the settlement proceeds. Third, the insurers contended that the $25 million disgorgement payment was uncollectible either as a matter of public policy or under contract interpretive principles. Finally, they posited that neither the $25 million payment for independent research nor the $5 million payment for investor education was covered because those liabilities were not "losses" within the meaning of the policies.

Supreme Court found that triable issues of fact existed as to whether Bear Stearns breached the policy clause prohibiting it from settling without the insurers' consent and whether the investment banking exclusion applied. Siding with the insurers on the disgorgement issue, the court held that the $25 million disgorgement payment did not constitute damages under the terms of the policies and that Bear Stearns was not entitled to look behind the settlement to ascertain whether the entire $25 million truly represented ill-gotten gains. The court also rejected the insurers' position that the $25 million payment for independent research and $5 million payment for investor education were not losses under the policies. Bear Stearns and the insurers appealed.

The Appellate Division modified, by granting Bear Stearns summary judgment on the investment banking exclusion and independent research/investor education issues and denying the insurers summary judgment on the disgorgement issue, and otherwise affirmed. The court concurred with Supreme Court in finding an issue of fact as to whether Bear Stearns breached the provision obligating it to obtain the consent of the insurers, but determined that the investment banking exclusion was not applicable. Despite the agreement by Bear Stearns to pay $25 million as disgorgement, the court found "an issue of fact as to

whether the portion of the settlement attributed to disgorgement actually represented ill-gotten gains or improperly acquired funds" (34 AD3d 300, 302 [2006]). Finally, the court rejected the insurers' contention that the combined $30 million payment for independent research and investor education were not covered losses.

The Appellate Division granted the insurers leave to appeal and certified the following question to this Court: "Was the order of the Supreme Court, as modified by this Court, properly made?" We conclude that it was not.

The insurers raise a number of objections to the Appellate Division order, but we find it necessary to address only one of them. The insurers contend that the Bear Stearns settlement is not recoverable because Bear Stearns breached the policy provision obligating it to obtain their consent prior to settling the regulator lawsuits. Specifically, the insurers claim that Bear Stearns resolved and finalized the settlement of the case when it executed the settlement-in-principle in December 2002 or, at the latest, when it signed the consent agreement in April 2003 without advising the insurers. Bear Stearns counters that the courts below properly found a triable issue of fact as to whether its execution of these two documents constituted a breach of the policy provision.

The primary insurance policy, whose terms and conditions are incorporated into the follow-form excess policies, provides in relevant part:

> "The Insured agrees not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim in excess of a settlement authority threshold of $5,000,000 without the Insurer's consent, which shall not be unreasonably withheld . . . The insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented."

As with the construction of contracts generally, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (*White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007] [citation omitted]).

We conclude that Bear Stearns breached this provision when it executed the April 2003 consent agreement before notifying

the insurers or obtaining their approval. As contemplated by the earlier settlement-in-principle, Bear Stearns signed the April 2003 agreement acquiescing to the relief sought in the SEC federal action. Under this agreement, Bear Stearns agreed to pay $80 million, covering four payment categories, in order to resolve the various federal and state regulatory actions and proceedings pending against it. Bear Stearns further accepted injunctive relief that prevented it from violating certain NASD and NYSE rules. And it acknowledged that the SEC could present a final judgment to the federal court for signature and entry without further notice. In short, Bear Stearns did everything within its ability to settle the matter and no further action was required on its part.

We are unpersuaded by the contention that a triable issue of fact exists because the federal court did not approve the settlement until it entered a final judgment in October 2003. Parties are free to enter into a valid settlement agreement that is made subject to court approval. Notably absent from the agreement, however, was any provision similarly subjecting it to the insurers' approval. Having signed the consent agreement, Bear Stearns was not free to walk away from it before entry of a final judgment (see TLC Beatrice Intl. Holdings, Inc. v CIGNA Ins. Co., 2000 WL 282967, *7, 2000 US Dist LEXIS 2917, *20-21 [SD NY 2000] ["Although the Court, whose approval was sought by the parties, could accept or reject the Settlement, subject to that approval the parties themselves were bound by the Settlement's terms" (citation omitted)], affd sub nom. Lewis v Cigna Ins. Co., 234 F3d 1262 [2d Cir 2000] [table; text at 2000 WL 1654530, 2000 US App LEXIS 27848 (2000)]). In executing the April 2003 agreement, Bear Stearns settled a claim within the meaning of the insurance policy provision.

As a sophisticated business entity, Bear Stearns expressly agreed that the insurers would "not be liable" for any settlement in excess of $5 million entered into without their consent. Aware of this contingency in the policies, Bear Stearns nevertheless elected to finalize all outstanding settlement issues and executed a consent agreement before informing its carriers of the terms of the settlement. Bear Stearns therefore may not recover the settlement proceeds from the insurers.

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiffs' motion for summary judg-

ment granted, judgment granted declaring in accordance with this opinion and the certified question answered in the negative.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge KAYE taking no part.

Order reversed, etc.