[862 NYS2d 352]

FCI Group, Inc., Respondent, v City of New York et al., Appellants.

First Department, July 22, 2008

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Elizabeth I. Freedman, Francis F. Caputo* and *Susan Smollens* of counsel), for appellants.

*Sol Kodsi*, New York City, for respondent.

**OPINION OF THE COURT**

Tom, J.P.

In this action for the balance due under a construction contract, defendants City of New York and the Department of Citywide Administrative Services (DCAS) contend that plaintiff forfeited its right to further payment by engaging in unlawful conduct, specifically, the attempted bribery of two city employ-

ees, while plaintiff contends that public policy bars defendants from effecting a forfeiture. This Court concludes that plaintiff is bound by the contract's forfeiture provision and that its enforcement by the City does not offend public policy. We reject, however, defendants' alternative theory that this dispute falls within the contract's narrow alternative dispute resolution clause so as to require dismissal of this action in favor of arbitration.

Plaintiff contractor was retained by defendants to perform general construction work at Brooklyn's Borough Hall. The work is alleged to have been substantially, if not totally, completed by November 30, 2005. The following month, a complaint was received that two DCAS employees with oversight responsibility for plaintiff's contract work had received money from plaintiff's president and secretary, Choon Won Lee (also known as James Lee). The employees both told interviewers from the Inspector General's Office that envelopes containing $3,000 and a Christmas card had been left on their desks.* One of the envelopes also contained a copy of an August 2005 change order request in the amount of $101,708.82, which was awaiting the employee's approval for payment. The Department of Investigation obtained Lee's admission that he had left the payments, and he ultimately entered a guilty plea to a reduced charge of attempted giving unlawful gratuities (Penal Law §§ 110.00, 200.30).

This action was commenced after plaintiff received notice from DCAS that the contract had been canceled as a result of Lee's misconduct and that the City would cease making any further payments in connection with the work. The complaint seeks recovery in the amount of $260,928.37, the balance alleged to remain unpaid under the contract.

Defendants' answer asserts, as the first affirmative defense, section 01000 of the general conditions of the contract. Article 1, paragraph (K) requires compliance with the safeguards contained in the New York City Charter with respect to conflicts of interest. It provides, in relevant part:

> "1. No employee or person whose salary is payable
> in whole or in part from the City treasury . . . shall
> accept any valuable gift . . . from any person, firm

---

* Both employees immediately turned the envelopes over to their supervisors, and, that same day, the DCAS Inspector General brought the envelopes to Department of Investigation headquarters.

or corporation which to his knowledge is interested directly or indirectly in any manner whatsoever in business dealings with the City; and

"2. Any violation of . . . this section shall at the option of the Comptroller, render forfeit and void the Contract, work, business, sale or transaction affected."

Section 71.1 recites that the contract is subject to provisions of the City Charter, the Administrative Code and the Penal Law governing conflicts of interest (NY City Charter § 2604) and expressly provides that "under certain circumstances, penalties may be invoked against the donor as well as the recipient of any form of valuable gift." Section 5.2 declares that the contract is also subject to the Rules of the New York City Procurement Policy Board (PPB). PPB Rules (9 RCNY) § 1-03 (a) (3) provides:

"Vendors and their representatives have a responsibility to deal ethically with the City and its employees, and to respect the ethical duties of City employees. Information provided by vendors to the City must be complete and accurate. Vendors must at all times avoid conduct that is in restraint of competition. Vendors must not request City employees to engage in conduct that would violate the law, these Rules, or the principles set forth in this section."

Article 27 of the contract provides that "[a]ll disputes between the City and the Contractor of the kind delineated in this article that arise under, or by virtue of, this Contract" shall be determined in accordance with the PPB Rules, which provide for alternative dispute resolution (ADR). The procedure requires the contractor to submit the action or determination subject to dispute to the Commissioner and provides for review of his determination by the Comptroller and, ultimately, by the Contract Dispute Resolution Board, whose determination is subject to review under CPLR article 78. Application of the ADR procedure, however, is expressly limited

"to disputes about the scope of work delineated by the Contract, the interpretation of Contract documents, the amount to be paid for Extra Work or disputed work performed in connection with the Contract, the conformity of the Contractor's Work to the Contract, and the acceptability and quality of the Contractor's Work."

As pertinent to this appeal, defendants moved for summary judgment on the grounds that plaintiff is constrained to seek relief under the ADR provisions of the contract and that, in any event, plaintiff's unlawful conduct bars recovery in accordance with the contract's forfeiture provision. Supreme Court held that the ADR procedure is inapplicable because "[t]he dispute does not involve the quality of plaintiff's work" (2007 NY Slip Op 31433[U], *12), and that recovery is not precluded as a matter of public policy because the wrongdoing is only indirectly related to performance of the contract and not "an integral part of the *procuring* or *performing* of the contracts at issue" (*id.* at *10, citing *McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465, 471 [1960]).

■ On appeal, defendants maintain that this controversy is subject to alternative dispute resolution because, by its terms, the procedure encompasses "the interpretation of Contract documents," the contract itself is such a document, and the dispute concerns the scope of the forfeiture provision. This argument is disingenuous because it fails to acknowledge the limited scope accorded to ADR by the parties.

Arbitration and other alternative procedures for resolving disputes are creatures of contract, and while the law favors such alternatives to litigation (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 95 [1975]), a party will not be denied judicial resolution of a controversy unless it falls within the governing ADR provision (*compare Rio Algom v Sammi Steel Co.*, 168 AD2d 250 [1990], *lv denied* 78 NY2d 853 [1991], *with Lopez v 14th St. Dev., LLC*, 40 AD3d 313 [2007]). The constitutional right to seek redress before the courts cannot be waived by implication but must be relinquished in a clear and unequivocal manner (*Matter of Waldron [Goddess]*, 61 NY2d 181, 183-184 [1984]).

Article 27 of the subject contract applies only to specified disputes; thus, it is a narrow, not a broad, ADR provision (*compare Lopez*, 40 AD3d at 314, *with Sea Trade Mar. Corp. v Hellenic Mut. War Risks Assn. [Bermuda]*, 7 AD3d 289 [2004], *lv dismissed* 3 NY3d 766 [2004]). For example, we have held that application of this provision of the City's contract "is limited by the parties' agreement to claims arising out of disputed work, a category that does not include delay damages" (*CAB Assoc. v City of New York*, 32 AD3d 229, 232 [2006], citing *Gemma Constr. Co. v City of New York*, 246 AD2d 451, 453 [1998]). It is dispositive that the dispute at bar does not involve

an item of the work performed but the interpretation of a contract provision concerning conflicts of interest that, likewise, does not fall within the purview of the limited ADR provision.

Defendants' contention that article 27 applies to "the interpretation of Contract documents" neither construes that language in context nor accords respect to the parties' stated intent to limit application of the ADR procedure (*see L.A. Wenger Contr. Co., Inc. v Kreisler Borg Florman Gen. Constr. Co., Inc.*, 43 AD3d 305, 306 [2007] [noting that a virtually identical ADR provision in a city contract is not "a typical, broadly worded arbitration clause"]). In the context of the performance of a construction contract, the term "contract documents" generally refers to "architectural plans, drawings, surveys, specifications, engineering reports, change orders, and the like . . . applicable to the work to be performed" (*Bussanich v 310 E. 55th St. Tenants*, 282 AD2d 243, 244 [2001]; *see also Greater Johnstown School Dist. v Frontier Ins. Co.*, 252 AD2d 615, 617 [1998] [" 'drawings, specifications, or other Contract Documents' "]). The Court of Appeals has noted that a provision for the submission of disputes concerning the interpretation of contract documents to an architect reflected the parties' recognition that "this provision should be held to relate only to the substantive provisions of the contract documents as to which the architect might be expected to have a special competence" (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 10 n 4 [1980]).

The interpretation of article 27 urged by defendants transforms a procedure that is expressly afforded limited scope by the parties into an ADR provision with universal application. It is axiomatic that a contract dispute will implicate the terms of the agreement; if all that is required for a dispute to come within the ambit of the provision is that its resolution requires reference to the contract terms, then any dispute will be subject to alternative resolution because the provisions of the parties' agreement is the best indication of their intent (*see Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]). Such an interpretation, moreover, renders the language limiting the scope of the ADR provision mere surplusage, in contravention of the settled rule that a contract is to be construed so as to give effect to each and every part (*see Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]). As stated in *Laba v Carey* (29 NY2d 302, 308 [1971], quoting *Corhill Corp. v S.D. Plants, Inc.*, 9 NY2d 595, 599 [1961], quoting *Muzak Corp. v Hotel Taft Corp.*,

1 NY2d 42, 46 [1956]), "a court should not 'adopt an interpretation' which will operate to leave a 'provision of a contract . . . without force and effect.' " It is likewise settled that a court should not "rewrite the terms of an agreement under the guise of interpretation" (*85th St. Rest. Corp. v Sanders*, 194 AD2d 324, 326 [1993]).

As to the merits, as a general rule, "parties should be free to chart their own contractual course" unless public policy is offended (*Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006]). In this case, plaintiff agreed to conduct itself ethically in its performance of the contract with the City and consented to the imposition of penalties for violating the contractual prohibition against dispensing monetary inducements to city workers. The strong disincentive against bribery contained in the agreement promotes public policy. It has the salutary effect of deterring corruption and illegality that could otherwise impair the quality of the work performed, compromise its safety, endanger the public, and increase the overall cost of construction to the taxpayer.

To constitute a valid defense to an action on a contract, the alleged illegality must be "central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract" (*McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465, 471 [1960], *supra*; *see also Ross Bicycles v Citibank*, 178 AD2d 388, 390 [1991]). Here, defendants allege a statutory violation. " 'If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied' " (*Benjamin v Koeppel*, 85 NY2d 549, 553 [1995], quoting *Rosasco Creameries, Inc. v Cohen*, 276 NY 274, 278 [1937]).

The illegal conduct at issue here has a direct connection to the obligation sued upon since it concerned a significant portion of the outstanding balance remaining due on the contract. While the work had been substantially completed, payment for the outstanding balance still had to be approved by DCAS (*see Koren-DiResta Constr. Co. v New York City School Constr. Auth.*, 293 AD2d 189, 195 [2002]). The two DCAS employees Lee attempted to bribe were responsible for approving change order requests. At the time, change order requests for $101,708.82 were awaiting approval, and a balance of $260,928.37 remained due under the contract. A material amount of the contract consideration was at risk, and it is apparent that Lee's at-

tempted bribe was intended to influence the agency's decision. Thus, Lee's corruption was not merely incidental or collateral to plaintiff's performance under the contract.

That the contract here was not induced by fraud does not change the result. "[C]ontracts, although legal in their inducement and capable of being performed in a legal manner, which have nonetheless been performed in an illegal manner, will not be enforced" (*Prote Contr. Co. v Board of Educ. of City of N.Y.*, 230 AD2d 32, 40 [1997]). In *Prote*, a window installation contractor bribed a city employee to render an interpretation, favorable to the contractor, that the contract's specifications did not require the use of a glazing technique known as "back puttying" (230 AD2d at 33). This Court held that if the bribery were proved at trial, dismissal of the complaint seeking payment for the contract balance would be required. We noted that

> "the conduct alleged on the part of plaintiff in offering a bribe to a key [city] employee as to a determination bearing on the issue of performance, if established, would be of a kind so gravely illegal and immoral and so inextricably connected with the contested question of performance under the contracts as to bar recovery thereunder as a matter of public policy" (*id.* at 41).

Here, Lee pleaded guilty to attempting to bribe two city employees, and the issue of bribery is not in dispute. As the Court of Appeals stated in *McConnell* (7 NY2d at 469), "Proper and consistent application of a prime and long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption" (*see also R.A.C. Group, Inc. v Board of Educ. of City of N.Y.*, 21 AD3d 243, 249 [2005], *lv denied* 6 NY3d 702 [2005]).

Accordingly, the order of the Supreme Court, New York County (Paul G. Feinman, J.), entered June 4, 2007, insofar as it denied defendants' motion for summary judgment dismissing the cause of action for breach of contract, should be reversed, on the law, without costs, the motion granted, and the complaint dismissed in its entirety. Appeal from that part of the order that granted plaintiff's cross motion for summary judgment dismissing the first affirmative defense of failure to state a cause of action should be dismissed, without costs, as academic in view of the foregoing. The Clerk is directed to enter judgment accordingly.

Buckley, Sweeny and Moskowitz, JJ., concur.

Order, Supreme Court, New York County, entered June 4, 2007, reversed, on the law, without costs, defendants' motion for summary judgment dismissing the cause of action for breach of contract granted, and the complaint dismissed in its entirety. Appeal from that part of the order that granted plaintiff's cross motion for summary judgment dismissing the first affirmative defense dismissed, without costs, as academic in view of the foregoing. The Clerk is directed to enter judgment accordingly.