■ RACHEL L. ARFA et al., Plaintiffs/Counterclaim Defendants-Appellants-Respondents, v GADI ZAMIR et al., Defendants/Cross Claim Defendants, 546-552 WEST 146th STREET, LLC, et al., Intervenors-Defendants/Counterclaim Plaintiffs/Cross Claim Plaintiffs-Respondents-Appellants, and

2000 DAVIDSON AVE., LLC, Intervenor-Defendant/Counterclaim Plaintiff/Cross Claim Plaintiff. (And Another Action.) [880 NYS2d 635]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered April 30, 2008, which, in determining the parties' respective motions to distribute certain funds, inter alia, directed that the payment owed by intervenors-defendants 546-552 West 146th Street LLC and 522-536 West 147th Street LLC to cross claim defendant Harlem Holdings, LLC on account of the latter's "Put" include an "Upside" fee and that the "Upside" fee be calculated according to schedule C of said intervenors' respective operating agreements, and order, same court and Justice, entered August 1, 2008, which, to the extent appealed from, upon reargument and renewal, amended the prior order to direct payment of certain amounts to plaintiff Argelt, LLC and defendant Zamir Properties, Inc., unanimously affirmed, with costs.

Section 8.6 (c) of the relevant operating agreements provides that "[u]pon the removal of any of the initial Managers as a Manager of the Company . . . Harlem Holdings, at any time thereafter, shall have the right to put to and the Company shall have the obligation to purchase all of the Interest of Harlem Holdings, LLC," and that the purchase price "shall be (i) the fair market value of such Interest . . . plus (ii) 20% of the Upside [i.e., the proceeds of the sale]." Contrary to the intervenors' contention, this contractual provision is unambiguous and therefore must be given its "plain and ordinary meaning" (*see Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170, 177 [2008] [internal quotation marks and citation omitted]). Section 8.6 (c) expressly authorizes the exercise of the "Put" at any time *after* the removal of an initial manager, and it does not restrict payment of the "Upside" in the manner proposed by the intervenors. We will not "rewrite the terms of an agreement under the guise of interpretation" (*FCI Group, Inc. v City of New York*, 54 AD3d 171, 177 [2008], *lv denied* 11 NY3d 716 [2009] [internal quotation marks and citation omitted]).

Schedule C of the operating agreements, titled "Calculation of Refinancing Proceeds and Sale Proceeds," provides a more specific formula for calculating the "Upside" fee than the formula, with which it is inconsistent, provided in section 2.1 of the agreements. Therefore, the fee is correctly calculated according to schedule C (*see Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v Kvaerner a.s.*, 243 AD2d 1, 8 [1998]).

We have considered the intervenors' remaining arguments, including those pertaining to the order that directed distribution of most of the funds to Argelt and Zamir Properties, and find them unavailing. Concur—Saxe, J.P., Buckley, McGuire, Moskowitz and Acosta, JJ. [*See* 2008 NY Slip Op 31332(U).]