OPINION OF THE COURT
Eileen Bransten, J.
This matter comes before the court on petitioner Turner Construction Company’s verified petition (the petition) to permanently stay the arbitration initiated by respondent J & A Concrete Corporation. Respondent opposes. For the reasons that follow, the petition is granted.
Background
Petitioner was retained by the Government of the Republic of Singapore (the owner) to act as general contractor on a construction project known as the New Chancery of the Permanent Mission of Singapore to the United Nations (the project).
Petitioner and respondent entered into a subcontract dated November 16, 2011 (the subcontract), pursuant to which respondent would be paid $2.9 million to perform work related to “superstructure concrete” for the project. (Petition ¶ 5.)
As set forth in greater detail below, the subcontract sets forth the procedure by which respondent is required to request payment from petitioner. The underlying dispute stems in part from respondent’s requisition for payment submitted on July 19, 2013. On August 2, 2013, petitioner returned a marked-up *220 copy of the requisition to respondent, stating that certain of the invoiced amounts were not approved. Specifically at issue are 10 invoices, pursuant to which respondent seeks payment totaling $57,561 (the invoices).
Separately, the subcontract provides that a certain percentage of the contract price is retained by the owner until completion of the project. Respondent’s request that the amount of such retainage be reduced from 10% to 5% was denied, although the retainage was reduced to $250,000 by petitioner’s letter dated June 13, 2013. Respondent nevertheless argues that the amount of such retainage is unreasonable.
On October 4, 2013, respondent filed a demand for arbitration with the American Arbitration Association (AAA), seeking recovery of $360,000 for “ ‘contract work, change orders and retainage.’ ” (Petition ¶ 6.) The arbitration demand was assigned claim No. 002-ROF-59N. (Petitioner’s exhibit B.) The parties thereafter agreed to extend the deadlines imposed by the AAA until November 14, 2013 (Rosen affirmation, exhibit A), and petitioner commenced this action on November 22, 2013.
Analysis
A petition to permanently stay arbitration is brought pursuant to section 7503 of the New York Civil Practice Law and Rules, which provides in pertinent part that “a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with.” (CPLR 7503 [b].)
In the context of such a petition, “the courts play the ‘gate-keeping’ role of deciding certain ‘threshold’ issues before compelling or staying arbitration.” (Merrill Lynch, Pierce, Fenner & Smith v Benjamin, 1 AD3d 39, 43 [1st Dept 2003].) Notably, “the threshold issue of whether the parties have agreed to arbitrate or otherwise are bound to arbitrate, is a matter for the courts to decide.” (Southgate Owners Corp. v KNS Bldg. Restoration Inc., 2013 NY Slip Op 32683[U], *2 [Sup Ct, NY County, July 24, 2013].) According to the First Department, “[t]he party seeking a stay of arbitration has the burden of showing sufficient facts to establish justification for the stay.” (Matter of AIU Ins. Co. v Cabreja, 301 AD2d 448, 449 [1st Dept 2003].)
Respondent initiated the arbitration in question pursuant to article 35-E of the New York General Business Law, which is also known as the New York Prompt Payment Act (PPA). Gen *221 eral Business Law § 756-b (3) (c) provides that under certain circumstances, an “aggrieved party may refer the matter ... to the American Arbitration Association for an expedited arbitration pursuant to the Rules of the American Arbitration Association.” (General Business Law § 756-b [3] [c].) General Business Law § 756-b (3) (a) sets forth the circumstances under which such a referral may take place, including “where a subcontractor alleges a contractor has violated the provisions of this article.” (General Business Law § 756-b [3] [a] [iv].)
I. Whether the Invoices Provide a Basis for Referral to Arbitration
The parties disagree whether the invoices provide a basis for referring the underlying dispute to arbitration. First, there is a question as to whether the invoices were timely disputed by petitioner. If they were not, as respondent contends, then petitioner would have committed a PPA violation which could trigger respondent’s right to initiate arbitration. Second, the work detailed in the invoices appears to have been authorized by petitioner’s representatives through the issuance of “Additional Work Order[s],” making them effectively undisputed. Arguably, petitioner’s subsequent failure to pay likewise constitutes a PPA violation warranting referral to arbitration.
A. The Timeliness of the Invoices
General Business Law § 756-a (2) (a) (ii) provides that “[u]pon delivery of an invoice and all contractually required documentation, a contractor or subcontractor shall approve or disapprove all or a portion of such invoice within twelve business days.” (General Business Law § 756-a [2] [a] [ii].)
Respondent characterizes the invoices as “undisputed, unprocessed, overdue and unpaid,” and states that “the invoices, although received many months before the commencement of the arbitration, are undisputed.” (Respondent’s affirmation in opp ¶¶ 1, 10.)
The dates of the invoices range from May 9, 2012 to April 26, 2013. (Respondent’s affirmation in opp ¶ 3.) However, despite their age, the invoices were submitted together on July 19, 2013. (Petition ¶ 9.) By response submitted on August 2, 2013, within the 12-business-day period mandated by General Business Law § 756-a (2) (a) (ii), petitioner disputed the invoices. (Petition ¶ 9.) The other requisition referenced in the parties’ papers is dated June 20, 2013, did not include the invoices, and was paid in the full amount of $148,858.20 by check dated July 16, 2013. (Petitioner’s reply affirmation ¶ 4; petitioner’s reply, exhibit A.) *222 Respondent has not identified any other requisition in which the invoices were submitted.
Accordingly, petitioner’s response to the July 19, 2013 requisition was timely under the PPA and does not provide basis under General Business Law § 756-b for referral to arbitration.
B. The Additional Work Orders
Respondent contends that the invoices were authorized and confirmed by petitioner’s representative by the issuance of multiple additional work orders, and that the invoices therefore represent work that respondent “completed, outside its contract work, at Turner’s direction.” (Respondent’s affirmation in opp ¶¶ 3-5.) In effect, respondent appears to be arguing that petitioner’s issuance of the additional work orders authorizing the work set forth in the invoices precluded petitioner from later disputing the invoices when they were submitted with the July 19, 2013 requisition.
Respondent’s characterization of the work as “outside its contract work” notwithstanding, the invoices along with multiple additional work orders memorialize exactly the type of deviation from “the Work” contemplated by article IX of the subcontract. Article IX addresses “Change Orders, Additions and Deductions.” (Petitioner’s exhibit A at 51.) Article IX permits petitioner “to make changes, additions and/or omissions in the Work as it may deem necessary, upon written order to the Subcontractor.” (Petitioner’s exhibit A at 51.) Article IX further provides that
“[s]hould the parties hereto be unable to agree as to the value of the work to be changed, added or omitted, the Subcontractor shall proceed with the work promptly under the written order of [petitioner] from which the stated value of the work shall be omitted, and the determination of the value of the work shall be referred to the Architect whose decision shall be final and binding upon the parties hereto.” (Petitioner’s exhibit A at 51.)
Each additional work order omits a stated value for the work described, such that “the determination of the value of the work . . . [should have been] referred to the Architect whose decision shall be final and binding upon the parties hereto.” (Petitioner’s exhibit A at 51.) The exclusion of a provision permitting the arbitration of such disputes, or even arbitral review of the architect’s determination, forecloses respondent’s *223 right to refer the underlying dispute to arbitration. (See South-gate Owners Corp. v KNS Bldg. Restoration Inc., 2013 NY Slip Op 32683[U], *1, *3 [2013] [interpreting the omission of an arbitration clause from an AIA contract as the “ express () exclusion) (of) arbitration as the vehicle for resolution of disputed matters”].)
Separately, article IV of the subcontract sets forth the process by which respondent is required to bill petitioner for work performed. In pertinent part, article IV provides that respondent shall submit requisitions to petitioner on a monthly basis and, after reducing the amount requested based on certain deductions, the balance, “as approved by [petitioner] and the Architect,” is to be paid to respondent “on or about the fifteenth (15th) day of the succeeding month or in accordance with the Contract Documents.” (Petitioner’s exhibit A at 2.)
General Business Law § 756-a (1) provides that “[t]he parties to a construction contract may, by mutual agreement, establish a billing cycle for the submission of invoices requesting payment for work performed pursuant to a construction contract.” (General Business Law § 756-a [1].) General Business Law § 756-a (2) provides that “[a] contractor shall be entitled to invoice the owner for interim payments at the end of the billing cycle.” (General Business Law § 756-a [2] [a].) Article IV establishes the billing cycle and means by which invoices are submitted by respondent for consideration by petitioner, such that they would thereafter be transmitted to the owner and/or architect for final approval and payment. Thus, the mere issuance of an additional work order does not constitute a requisition for payment, such that the 12-business-day period in which to dispute would be triggered.
In sum, the issuance of additional work orders does not operate as a form of implied consent to the invoices, particularly in light of the fact that the additional work orders omitted the work’s stated value, as contemplated by article IX of the subcontract. Furthermore, the additional work orders do not qualify as a substitute for a requisition submitted pursuant to article IV of the subcontract. Finally, the dispute resolution language of article IX, which refers disputes related to the valuation of work done pursuant to change orders to the architect, whose determination is binding upon the parties, is notably and significantly devoid of any arbitration provision, indicating the parties’ intent not to permit that as a means of resolving disputes such as those underlying this petition.
*224 Accordingly, the additional work orders do not provide a basis under General Business Law § 756-b for referral to arbitration.
II. Whether the Retainage Provides a Basis for Referral to Arbitration
The parties dispute whether the retainage is unreasonable and therefore in violation of the PPA, such that referral to arbitration is appropriate. In the context of construction contracts, retainage is “money withheld from progress payments in order to ensure proper completion of a contractor’s work.” (Almar Plumbing & Heating Corp. v Dormitory Auth. of State of N.Y., 21 Misc 3d 1119[A], 2008 NY Slip Op 52102[U], *2 [Sup Ct, Kings County 2008].)
General Business Law § 756-c provides that
“[b]y mutual agreement of the relevant parties an owner may retain a reasonable amount of the contract sum as retainage. A contractor or subcontractor may also retain a reasonable amount for retainage so long as the amount does not exceed the actual percentage retained by the owner. Retainage shall be released by the owner to the contractor no later than thirty days after the final approval of the work under a construction contract.” (General Business Law § 756-c.)
Petitioner notes that it is not withholding any monies paid by the owner for work performed by respondent. (Petitioner’s mem in support at 3.)
Article IV of the subcontract provides in pertinent part that a reserve of 10% shall be deducted from the amount requisitioned by respondent. (Petitioner’s exhibit A at 2.) Article IV further provides that in the event respondent causes damage to the work or fails to perform under the terms of the subcontract, petitioner has the right to “retain from any payment then due or thereafter to¡ become due an amount which it deems sufficient to . . . make good any such nonpayment, damage, failure or default.” (Petitioner’s exhibit A at 3.)
Correspondence between the parties (petitioner’s exhibits D, E) confirms that' respondent’s request for a reduction of the retainage from 10% to 5% was denied because of problems with respondent’s work. Petitioner’s June 13, 2013 letter, which was sent in response;to respondent’s June 3 request for a retainage reduction, itemizes purported deficiencies with respondent’s work and states that the retainage will be $250,000 instead of being reduced to 5%.
*225 The current retainage of $250,000 is less than 10% of the $2.9 million contract price, as provided by article IV of the subcontract. Besides stating that its work on the project is 99% complete, such that there is approximately $30,000 worth of work remaining, in addition to the $57,000 in dispute over the invoices, respondent has not explained why $250,000 is unreasonable.
Accordingly, the retainage does not provide a basis under General Business Law § 756-b for referral to arbitration.
III. Whether the Subcontract Permits Respondent’s Referral to Arbitration
Notwithstanding the determinations above with respect to the invoices and request for a release of retainage, there is also a question of whether, under the subcontract, respondent is entitled to refer the underlying dispute to arbitration under PPA.
Article I of the subcontract provides in pertinent part that in the event of a dispute which cannot be resolved through “voluntary and non-binding Alternative Dispute Resolution (ADR) procedures, . . . then such dispute[ ] shall be resolved at [petitioner’s] sole option either in the manner and forum pursuant to which disputes between the Owner and [petitioner] are to be resolved under the terms of the General Contract or according to law.” (Petitioner’s exhibit A at 1 [emphasis added].) Article I further provides that respondent “expressly agrees to waive its right to a trial by jury in case [petitioner] elects to resolve the dispute in litigation.” (Petitioner’s exhibit A at 1.)
The phrase, “according to law,” is not defined in the subcontract. However, “ ‘[s]ingle clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.’ ” (Arrowgrass Master Fund Ltd. v Bank of N.Y. Mellon, 106 AD3d 582, 583 [1st Dept 2013], quoting Analisa Salon, Ltd. v Elide Props., LLC, 30 AD3d 448, 448-449 [2d Dept 2006].) Furthermore, “ ‘a court should not “adopt an interpretation” which will operate to leave a “provision of a contract . . . without force and effect.” ’ ” (FCI Group, Inc. v City of New York, 54 AD3d 171, 177 [1st Dept 2008], quoting Laba v Carey, 29 NY2d 302, 308 [1971].)
Petitioner’s option to resolve the dispute “according to law” must be read in context with the subsequent clause which contemplates that petitioner may “elect[ ] to resolve the dispute in litigation.” To do otherwise would run afoul “of the settled *226 rule that a contract is to be construed so as to give effect to each and every part.” (FCI Group, Inc., 54 AD3d at 176.) That is, if respondent were permitted to unilaterally refer the dispute to binding arbitration, the language of the subcontract which addresses petitioner’s possible election of litigation as a means of dispute resolution would be left without force and effect.
Respondent argues that the legislative history of the PPA contemplates sending disputes, such as the one at issue here, to arbitration and that to do otherwise “would render the Prompt Pay[ment] Act useless at the contractor’s unilateral discretion.” (Respondent’s affirmation in opp ¶ 31.)
However, the plain language of the PPA does not support respondent’s position. General Business Law § 756-a provides that
“[i]t is the policy and purpose of this article to expedite payment of all monies owed to those who perform contracting services pursuant to construction contracts. Except as otherwise provided in this article, the terms and conditions of a construction contract shall supersede the provisions of this article and govern the conduct of the parties thereto.” (General Business Law § 756-a [emphasis added].)
General Business Law § 756-b (1) (b) provides an example of where it is “otherwise provided.” That section provides for the accrual of interest on overdue payments to subcontractors at a minimum interest rate, “[notwithstanding any contrary agreement.” (General Business Law § 756-b [1] [b].)
General Business Law § 756-b (3) (c) includes no such qualifying language, which prevents the court from adopting respondent’s interpretation. Indeed,
“ ‘ “[w]here words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation” . . . , and the intent of the Legislature must be discerned from the language of the statute . . . without resort to extrinsic material such as legislative history or memoranda.’ ” (Matter of County of Niagara v Daines, 91 AD3d 1288, 1289 [4th Dept 2012].)
Accordingly, pursuant to General Business Law § 756-a, the excerpted language of the subcontract addressing the resolution of disputes supersedes General Business Law § 756-b (3) (c), such that respondent may not refer the underlying dispute to arbitration.
*227 Conclusion
Accordingly, it is hereby ordered and adjudged that the petitioner Turner Construction Company’s petition to stay arbitration is granted; and it is further ordered and adjudged that the arbitration, American Arbitration Association claim No. 002-ROF-59N, is hereby permanently stayed.