WILSON, J.
In January 2002, Dormitory Authority of the State of New York (DASNY) contracted with Samson Construction Company (Samson), a general contractor, for construction of a new forensic laboratory for New York City, to be built next to Bellevue Hospital. Although the lab was constructed for use by New York City's Office of the Chief Medical Examiner, the construction *712 documents identified DASNY as the owner. DASNY also contracted with a joint venture between Gilbane Building Company and TDX Construction Corporation (hereinafter, Gilbane JV) for Gilbane JV to be the construction manager for the project. DASNY's contract with Samson provided that Samson would obtain general liability insurance for the job, with an endorsement naming as additional insureds: "[DASNY], the State of New York, the Construction Manager [Gilbane JV] and other entities specified on the sample Certificate of Insurance provided by [DASNY]." Samson obtained general liability insurance coverage from Liberty Insurance Underwriters (Liberty). The sample certificate of insurance listed as "Additional Insureds under General Liability as respects this Project: ... Gilbane/TDX Construction Joint Venture."
In 2006, DASNY sued Samson and Perkins Eastman Architects, P.C., the project architect, alleging that Samson damaged the excavation support system in August of 2003 by negligently removing a section of steel plating which caused the foundation of the neighboring building to settle several inches. Perkins then commenced a third-party action against Gilbane JV in 2010. Gilbane JV provided notice to Liberty by letter in April of 2011, seeking defense and indemnity under the Liberty policy for Perkins' suit against it, which Liberty denied in July of that year. Gilbane **164 JV commenced this lawsuit in September of 2012, arguing that it qualified for coverage under the Liberty policy as an additional insured. Supreme Court denied Liberty's motion for summary judgment, holding that Gilbane JV is an additional insured under the policy ( 2014 N.Y. Slip Op. 33766[U], 2014 WL 2392024 [2014] ). The Appellate Division subsequently reversed, granting Liberty's motion (143 A.D.3d 146, 38 N.Y.S.3d 1 [2016] ). We now affirm, because the terms of the policy at issue here require a written contract between the named insured and an additional insured, if coverage is to be extended to an additional insured.
The relevant portion of the Liberty policy is the "Additional Insured-By Written Contract" provision, which reads:
"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you." (Emphasis added).
Gilbane JV has no written contract with Samson denominating it an additional insured, but argues no such contract is necessary, because that requirement would conflict with the plain meaning of the Liberty endorsement; with "well-settled rules of policy interpretation"; and with the parties' reasonable expectations. Alternatively, Gilbane JV argues that the Liberty endorsement is, at most, ambiguous on that point, and therefore must be construed against Liberty and in favor of coverage. Gilbane JV is incorrect; the endorsement is facially clear and does not provide for coverage unless Gilbane JV is an organization "with whom" Samson has a written contract.
"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies" ( State of NY v. Home Indem. Co., 66 NY2d 669, 671, 495 N.Y.S.2d 969, 486 N.E.2d 827 [1985] ). "In determining a dispute over insurance coverage, we first look to the language of the policy" ( Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 221, 746 N.Y.S.2d 622, 774 N.E.2d 687 [2002] ). "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must *713 be given their plain and ordinary meaning' " ( Vigilant Ins. Co. v. Bear Stearns Cos., Inc., 10 N.Y.3d 170, 177, 855 N.Y.S.2d 45, 884 N.E.2d 1044 [2008], quoting White v. Continental Cas. Co., 9 N.Y.3d 264, 267, 848 N.Y.S.2d 603, 878 N.E.2d 1019 [2007] ).
Here, the endorsement would have the meaning Gilbane JV desires if the word "with" had been omitted. Omitting "with," the phrase would read: "any person or organization whom you have agreed by written contract to add," and Gilbane JV's position would have merit. But Samson and Liberty included that preposition in the contract between them, and we must give it its ordinary meaning. Here, the "with" can only mean that the written contract must be "with" the additional insured. Gilbane JV proposes other wordings that, in its view, would more clearly require the existence of a written contract between Samson and an additional insured, but those formulations are no clearer and, in any event, the endorsement's meaning is plain and unambiguous.*
**165 The dissent aptly notes that "[a] reviewing court must decide whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as to the meaning of the policy" ( Fed. Ins. Co. v. Int'l Bus. Machines Corp., 18 N.Y.3d 642, 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 [2012] [internal quotation marks, brackets and citations omitted] [emphasis added] ), and yet offers no explanation for the meaning of "with" in "with whom" in the provision at issue when proposing that the language is ambiguous (dissenting op., at 138, 74 N.Y.S.3d at 166-67, 97 N.E.3d at 714-15). The dissent also centers its argument on the proposition that "the test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech" (dissenting op., at 138, 142, 74 N.Y.S.3d at 166-67, 169, 97 N.E.3d at 714-15, 718 [internal quotation marks omitted and emphasis added], citing Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 25 N.Y.3d 675, 680, 16 N.Y.S.3d 21, 37 N.E.3d 78 [2015] ). We cannot ascribe to the position that, whereas "with" has a definite meaning in English, the average insured understands it to have no meaning. Likewise, our decision does not "undermine[ ] an industry market solution aimed at efficiently allocating risk among entities involved in construction projects" (dissenting op., at 137, 74 N.Y.S.3d at 166, 97 N.E.3d at 714)-it merely requires contracting parties who desire the result proposed by the dissent to remove the word "with" from their future contracts.
Gilbane JV cites extrinsic materials, including the sample certificate of insurance *714 in support of its argument that it reasonably expected to be covered by the policy, and relies heavily on the contract between DASNY and Samson, which required Samson, as the prime contractor, to name Gilbane JV as an additional insured on all liability policies obtained by Samson. However, "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide" ( Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 [2002] ). Gilbane JV might have a claim against Samson for failing to obtain additional insured status for Gilbane JV, but that breach would not permit us to rewrite Samson's contract with Liberty.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Liberty and Gilbane JV each cites a smattering of cases interpreting similar contractual language that rule in their favor (compare Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co., 2016 WL 452157 [S.D.N.Y. Feb. 4, 2016] ; Plaza Construction Com. v. Zurich Am. Ins. Co., 2011 WL 1212719 [N.Y. Sup. Ct. 2011] ; and Am. Home Assur. Co. v. Zurich Ins. Co., 26 Misc.3d 1223[A], 907 N.Y.S.2d 435 [N.Y. Sup. Ct. 2010] with Zoological Socy. of Buffalo v. Carvedrock, LLC, 2014 WL 3748545 [WDNY July 29, 2014] ; AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 102 A.D.3d 425, 961 N.Y.S.2d 3 [1st Dept. 2013] ; Linarello v. City Univ. ofN.Y., 6 A.D.3d 192, 774 N.Y.S.2d 517 [1st Dept. 2004] ; Murnane Bldg. Contrs., Inc. v. Zurich Am. Ins. Co., 33 Misc 3d 1215[A], 941 N.Y.S.2d 539 [Suffolk Sup. Ct. 2011] ; and Best Buy Co., Inc. v. Sage Electrical Contracting, Inc., 2009 WL 289675 [N.Y. Sup. Ct. 2009] ). That some courts may have erred in interpreting the policy language does not render the language ambiguous (Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 [1978] ).