Royal Waste Servs., Inc. v Interstate Fire & Cas. Co. (2020 NY Slip Op 03616)





Royal Waste Servs., Inc. v Interstate Fire & Cas. Co.


2020 NY Slip Op 03616


Decided on June 25, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 25, 2020

Renwick, J.P., Mazzarelli, Webber, Kern, Moulton, JJ.


11714 112999/10

[*1] Royal Waste Services, Inc., et al., Plaintiffs-Appellants,
v
Interstate Fire & Casualty Company, et al., Defendants-Respondents, A Fireman's Fund Insurance Company, et al., Defendants.


Cole Schotz P.C., New York (Brian L. Gardner of counsel), for appellants.
Rivkin Radler LLC, Uniondale (Michael A. Kotula of counsel), for Interstate Fire & Casualty Company, respondent.
Law Office of Lorne M. Reiter, LLC, New York (Sharon Moreland of counsel), for First Mercury Insurance Company, respondent.



Order, Supreme Court, New York County (Alan C. Marin, J.), entered January 23, 2019, which denied plaintiffs' motion for summary judgment declaring that defendants were obligated to provide excess liability coverage for claims arising out of a June 29, 2009 accident, and granted defendants' motions for summary judgment dismissing the complaint on the ground that Insurance Law § 2121 was inapplicable, unanimously modified, on the law, defendant Interstate's motion denied, defendant First Mercury's motion granted on the ground that coverage is excluded under First Mercury's excess liability policy, and otherwise affirmed, without costs.
Plaintiffs allege that they paid a broker the initial premium for the excess liability coverage issued by defendants, and that the broker also procured a financing agreement for them for the balance of the premiums. The party financing the premiums paid the broker on plaintiffs' behalf and plaintiffs complied with the financing agreement. Plaintiffs' president testified that plaintiffs only dealt with that broker, who delivered the policies to them. However, the premiums never reached defendants, who canceled the policies. Thereafter, three persons were killed during the term of the policies in an accident on plaintiffs' premises when the decedents inhaled hydrogen sulfide fumes (the accident). Defendants disclaimed coverage.
Plaintiffs now seek a declaratory judgment that they are covered by the excess coverage policies issued by defendants based on the payments they made to the broker and the financing company. Defendants assert that the broker cited by plaintiffs was not a part of the chain of brokers that led to them and they had no knowledge of it. First Mercury also asserts that it is not obligated to provide excess liability coverage to plaintiffs based on certain exclusions in its policy.
Initially, First Mercury is entitled to summary judgment dismissing the complaint on the ground that coverage for claims arising out of the accident is excluded under its policy's pollution and hazardous materials exclusions. "In determining a dispute over insurance coverage, we first look to the language of the policy" (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 AD2d 208, 221 [2002]). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Vigilant Ins. Co. v Bear Sterns Cos. Inc., 10 NY3d 170, 177 [2008][internal quotation marks omitted]). Pursuant to First Mercury's excess liability policy, coverage is excluded for " [i]njury or damages,' which would not have occurred in whole or in part but for the actual, alleged . . . discharge . . . release [*2]or escape of pollutants' at any time" and for " injury or damage' arising out of, caused or contributed by, hazardous materials' at any time." "Pollutants" are defined as "any solid, liquid, gaseous . . . irritant or contaminant, including smoke, vapor, . . . fumes, acids, alkalis, chemicals and waste" while "hazardous materials" are defined as " pollutants,' toxic substances, . . . and materials containing them."
First Mercury has established that coverage is excluded under its policy's pollution and hazardous materials exclusions on the ground that the deaths of the decedents in the underlying action resulted from the inhalation of the toxic hydrogen sulfide fumes in the drywell where decedents were working and that injuries resulting from the release of such fumes unambiguously fall under the plain language of the broad policy exclusions at issue here. Initially, both of the complaints in the underlying actions allege that the decedents died due to the inhalation of these toxic fumes. Indeed, the Dahan complaint alleges that the decedents' deaths were the result of "lethal toxic gases" at the work sites and wells, "deadly concentration of hydrogen sulfide gas and fumes upon the premises . . . and well" where the decedent was directed to work and "exposure to and inhalation of deadly concentration of toxic gases." The Rivas complaint alleges that the decedent died from exposure to fumes emanating from the sewers at the premises when he attempted to rescue the other two employees who had already been overcome with fumes. Additionally, after the accident, the OSHA Safety Notice made a finding that the decedents' deaths were the result of the decedents entering the drywell and being overcome with hydrogen sulfide fumes. In response, plaintiffs fail to raise an issue of fact to defeat First Mercury's motion as they have not put forth any evidence that decedents' deaths resulted from any cause other than the release or discharge of the toxic fumes in the drywell where decedents were working.
However, neither plaintiffs nor defendant Interstate are entitled to summary judgment. Where an insured makes timely payment to a broker in the chain of brokers and the insurer delivers the policy to the broker pursuant to the broker's request, Insurance Law § 2121 precludes the insurer from canceling the policy based on nonpayment of premiums where the broker did not remit the payment to the insurer (see Greater N.Y. Mut. Ins. Co. v Axentiou, 193 AD2d 474 [1st Dept 1993], lv dismissed 82 NY2d 748 [1993]; Bruckner Plaza Assoc. v Generali Ins. Co. of Trieste & Venice, U.S. Branch, 172 AD2d 408, 409 [1st Dept 1991], lv dismissed 78 NY2d 1007 [1991]).
Here, the record is replete with triable issues of fact as to whether the broker with whom plaintiffs state they dealt was in the chain of brokers leading from plaintiffs to Interstate, such that the payment of the premiums to the broker was sufficient to bind Interstate. Plaintiffs referred to the testimony of their president that the broker was the only broker used by them, and that the broker's employee delivered the policies to them. Moreover, the premium checks were made payable to the broker, who prepared a loss summary, and no evidence was presented demonstrating that another broker delivered the policies to plaintiffs. However, the absence of significant paperwork naming the broker cited by plaintiffs as a broker in the transaction, the testimony of the wholesale brokers that they did not deal with the broker cited by plaintiffs and would not do so, and the Notice of Excess Line Placement naming a different entity as plaintiffs' [*3]broker, raise questions that preclude summary judgment in favor of either plaintiffs or Interstate.
We have considered the parties' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 25, 2020
CLERK