■ JOSEPH LINARELLO et al., Plaintiffs, v CITY UNIVERSITY OF NEW YORK, Defendant, and MORSE DIESEL INTERNATIONAL, INC., Defendant and Third-Party Plaintiff-Appellant. JAGLER INDUSTRIES, INC., et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant. (And a Second Third-Party Action.) [774 NYS2d 517]—

Order, Supreme Court, New York County (Marilyn Shafer, J.), entered April 2, 2003, which, in an action by an injured laborer against, inter alia, the construction site's construction manager, defendant and third-party plaintiff-appellant Morse Diesel, inter alia, (1) granted the motions of third-party defendant general liability insurers USF&G and AEI for summary judgment declaring that their respective policies with third-party defendant subcontractors Westmont and Jagler, the latter plaintiff's employer, do not cover Morse Diesel as an additional insured, (2) denied in part Morse Diesel's cross motion for sanctions against Jagler for spoliation, and (3) denied Morse Diesel's cross motion for partial summary judgment on its cause of action against Jagler for contractual indemnification, unanimously modified, on the law and the facts, to preclude Jagler from denying receipt of Morse Diesel's June 1, 1998 memorandum, and to clarify that the indemnification provision in Jagler's contract with the Dormitory Authority may be enforceable depending on the outcome of the main action, and otherwise affirmed, without costs.

The indemnification clause in Jagler's contract with the site's owner, the State Dormitory Authority, invoked by Morse Diesel, provides that Jagler is to indemnify the owner and construction manager for any and all losses they sustain as a result of any or all injuries to any and all persons arising out of or occurring in connection with Jagler's work, excepting only injuries that arise out of faulty designs or the affirmative acts of the owner or construction manager committed with the intent to cause injury. Such clause indemnifies the owner and construction manager for their own negligence and therefore runs afoul of General Obligations Law § 5-322.1 (1). We reject Morse Diesel's argument that the indemnification clause, at least to the extent it does not require Jagler to indemnify Morse Diesel for its own negligence, is saved by another clause providing that "[e]ach and every provision of law and clause required by law to be inserted in the Contract shall be deemed to be inserted therein." Such language is not equivalent to language in the indemnification clause itself limiting a subcontractor's indemnification obligation "to the extent permitted by law" (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786, 795 [1997]; *Dutton v Pankow Bldrs.*, 296 AD2d 321 [2002], *lv denied* 99 NY2d 511 [2003]).

An indemnification clause that runs afoul of General Obligations Law § 5-322.1 (1) is enforceable in the event the indemni-

tee is found not negligent but nevertheless held vicariously liable to the plaintiff (*see Itri*, 89 NY2d at 795 n 5; *Masciotta v Morse Diesel Intl.*, 303 AD2d 309, 312 [2003]). There being no finding that Morse Diesel was not negligent, the motion court should not have said, in denying Morse Diesel's motion for a conditional judgment of indemnification against Jagler, that the indemnification clause is unenforceable. Accordingly, we modify to clarify that the indemnification may be enforceable depending on the outcome of the main action.

Morse Diesel's motion for a conditional judgment of indemnification against Jagler (*see Masciotta*, 303 AD2d at 310) was properly denied on the ground that Morse Diesel failed to demonstrate its freedom from negligence (*see Zeigler-Bonds v Structure Tone*, 245 AD2d 80, 81 [1997]; *Potter v M.A. Bongiovanni, Inc.*, 271 AD2d 918, 919 [2000]). As the motion court found, it appears that Morse Diesel had more than mere general supervisory authority, at least with respect to its subcontractor W. Property Resources, who was responsible for cleaning up debris and providing temporary protection around openings, and whose negligence in those respects may have contributed to the accident. In particular, there is evidence that Morse Diesel directed W. Property's work and supplied its equipment (*compare Masciotta*, 303 AD2d at 312; *Buccini v 1568 Broadway Assoc.*, 250 AD2d 466, 468-469 [1998]).

While Jagler's egregious destruction of its records pertaining to the project, including those that the court order had directed to be produced, hinders Morse Diesel's defense and third-party claims against Jagler, and therefore warrants a sanction, Morse Diesel is "not entirely bereft of evidence tending to establish [its] position" (*Cohen Bros. Realty v Rosenberg Elec. Contrs.*, 265 AD2d 242, 244 [1999], *lv dismissed* 95 NY2d 791 [2000]), and the motion court therefore properly refused to strike Jagler's answer as too drastic a remedy. Jagler's destruction of its personnel records certainly makes it more difficult for Morse Diesel to locate two former Jagler employees who may have relevant knowledge, but Morse Diesel has not shown that it is unable to locate them. While it was a proper exercise of discretion to preclude Jagler from denying receipt of the Dormitory Authority's April 28, 1998 letter advising that Morse Diesel was the new construction manager, we modify so as to further preclude Jagler from denying receipt of Morse Diesel's June 1, 1998 memorandum confirming discussions that all certificates of insurance were to be revised so as to include Morse Diesel as an additional insured. The motion court's decision to postpone "the imposition of other appropriate sanctions" for Jagler's destruction of records was properly deferred until the trial.

By the plain terms of the policies issued by USF&G and AEI to Westmont and Jagler, Morse Diesel is not an additional insured because it had no written contracts with Westmont and Jagler. Moreover, even if Morse Diesel were found to be a third-party beneficiary of Jagler's and Westmont's contracts with the Dormitory Authority (*but see Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 33-34 [1979], *affd* 49 NY2d 924 [1980]), that would simply mean that Morse Diesel has standing to sue Jagler and Westmont for breach of the provisions in those contracts requiring that they procure insurance covering Morse Diesel as an additional insured. It would not mean that the policies should be rewritten to name Morse Diesel as an additional insured. Nor should USF&G and AEI be estopped from denying that Morse Diesel is an additional insured on the basis of certificates of insurance naming Morse Diesel's predecessor construction manager as an additional insured. Assuming that such certificates are evidence of the existence of insurance (*but see American Ref-Fuel Co. v Resource Recycling*, 248 AD2d 420, 424 [1998]), to be estopped USF&G and AEI must have issued the certificates listing the predecessor with the intent of influencing Morse Diesel, and Morse Diesel must have relied on the certificates to its detriment (*see Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co.*, 151 AD2d 207, 210-211 [1989]; *see generally Werking v Amity Estates*, 2 NY2d 43, 53 [1956]; *Waldman v Cohen*, 125 AD2d 116, 122 [1987]). Morse Diesel makes no such showing. Accordingly, USF&G and AEI were properly granted summary judgment declaring that they are not obligated to defend or indemnify Morse Diesel.

Morse Diesel's appellate request for summary judgment against Westmont and Jagler on the issue of their failure to procure insurance is improper. Morse Diesel sought no relief against Westmont before the motion court, and its motion against Jagler was based on grounds other than failure to procure insurance (*see Trokie v York Preparatory School*, 284 AD2d 129 [2001]). Since the issue of Westmont's failure to procure insurance was not the subject of a motion before the motion court, Westmont's appellate request for summary judgment on that issue is also improper (*see Dunham v Hilco Constr. Co.*, 89 NY2d 425, 429-430 [1996]). Concur—Tom, J.P., Saxe, Ellerin, Lerner and Gonzalez, JJ.