[38 NYS3d 1]

GILBANE BUILDING CO./TDX CONSTRUCTION CORP. et al.,
Respondents, v ST. PAUL FIRE AND MARINE INSURANCE COM-
PANY et al., Defendants, and LIBERTY INSURANCE UNDER-
WRITERS, Appellant.

First Department, September 15, 2016

## APPEARANCES OF COUNSEL

*Hardin, Kundla, McKeon & Poletto, P.A.*, New York City (*George R. Hardin* of counsel), for appellant.

*Saxe Doernberger & Vita, P.C.*, New York City (*Richard W. Brown* of counsel), for respondents.

*Kaufman Dolowich & Voluck, LLP*, Woodbury (*Michael L. Zigelman* of counsel), for amicus curiae.

## OPINION OF THE COURT

RENWICK, J.

Plaintiffs Gilbane Building Co./TDX Construction Corp., a joint venture (the JV), and its individual members, Gilbane Building Company and TDX Construction Corporation, construction managers at a job site, seek a declaration that defendant Liberty Insurance Underwriters is obligated to defend and indemnify them, as an additional insured under a commercial general liability (CGL) policy issued by Liberty to a prime contractor. The principal issue in this appeal is the interpretation of the additional insurance endorsement in the policy which provides that an additional insured is "any person or organization with whom you [the insured] have agreed to add as an additional insured by written contract." Trial courts have arrived at conflicting interpretations of a similarly worded additional insured clause as to whether coverage is extended not only to those "with whom" the insured agreed, but also to those "for whom" the insured agreed to provide coverage.[1] We

---

1.  *Compare American Home Assur. Co. v Zurich Ins. Co.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U] [Sup Ct, Kings County 2010]; *Plaza Constr. Corp. v Zurich Am. Ins. Co.*, 2011 NY Slip Op 30709[U] [Sup Ct, NY County 2011], *with Murnane Bldg. Contrs., Inc. v Zurich Am. Ins. Co.*, 33 Misc 3d 1215[A], 2011 NY Slip Op 51943[U] [Sup Ct, Suffolk County 2011],

hold that the subject additional insured clause covers only those that have written contracts directly with the named insured.

Factual and Procedural Background

The underlying action giving rise to this insurance coverage dispute involves a construction project on property in Manhattan owned by the City of New York that is part of the Bellevue Hospital campus. The project entailed the construction of a 15-story building with a double basement for use as a DNA lab for the Chief Medical Examiner of the City of New York. Pursuant to a contract with the City, the Dormitory Authority of the State of New York (DASNY) agreed to finance and manage the project.

The JV was retained by nonparty DASNY to provide construction management services in connection with the project. Under the construction management agreement, any prime contractor, whether retained by DASNY or otherwise, was required to name the construction manager as an additional insured under its liability policies.

Nonparty Samson Construction Company entered into a separate contract with DASNY to perform services as the prime contractor for all foundation and excavation work on the project. In its prime contract, Samson agreed to procure commercial general liability insurance with an endorsement naming as additional insureds: "Dormitory Authority of the State of New York, The State of New York, the Construction Manager (if applicable) and other entities specified on the sample Certificate of Insurance provided by the Owner." The sample Certificate of Insurance states:

> "The following are Additional Insureds under General Liability as respects this Project:
>
> "City of New York
>
> "City of New York Health & Hospital Corporation
>
> "Forensic Biology Laboratory
>
> "Dormitory Authority-State of New York
>
> "Gilbane/TDX Construction Joint Venture."

*revd on other grounds* 107 AD3d 674 [2d Dept 2013]; *Best Buy Co., Inc. v Sage Elec. Contr., Inc.*, 2009 NY Slip Op 30208[U] [Sup Ct, NY County 2009], *and Zoological Socy. of Buffalo, Inc. v CarvedRock, LLC*, 2014 WL 3748545, 2014 US Dist LEXIS 105359 [WD NY, May 21, 2014, No. 10-CV-35A (Sr)]).

Samson, as required, obtained a policy from defendant Liberty for the relevant period, November 12, 2002 through November 12, 2003. The policy contained, as is relevant to this dispute, an "Additional Insured—By Written Contract" clause, stating:

"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you."

The policy also required that in the event of an "[o]ccurrence, [o]ffense, [c]laim [o]r [s]uit" defendant be notified "as soon as practicable." Endorsement No. 19 to the policy further provided:

"g. You must give us prompt written notice if any of the following conditions arise or if any injury involves the following: . . .

"(4) Any claim which may equal or exceed 50% of the insured's retention.

"(5) Any lawsuit or arbitration proceeding involving this policy brought against any insured.

"(6) Trial settings.

"(7) If defense counsel has been retained to defend a claim."

"h. In the event that you do not give us written notice within 30 days of the date you know or should have known of a claim or injury meeting one or more of the descriptions set forth in g. above, we shall have the option in our sole discretion to deny coverage under this policy if your failure to report any such loss has prejudiced our rights under this policy."

During the project, Samson's excavation and foundation work allegedly caused adjacent buildings to sink, resulting in significant structural damage to those buildings. In or about October 2003, the JV issued a change order to Samson for extra work to stabilize the adjacent buildings.

In 2006, DASNY commenced the litigation against Samson and Perkins Eastman, Architects, P.C., the project architect, seeking damages for Samson's negligence in performing the

work. In or about December 2010, Perkins Eastman commenced a third-party action against the JV and its members individually. Plaintiffs provided notice of the third-party action to defendant Liberty by letter dated April 25, 2011, seeking a defense and indemnification. Liberty denied coverage to plaintiffs by letter dated July 20, 2011, stating that plaintiffs had provided no documentation that Samson, the named insured, was supposed to defend and indemnify them, and that, in any event, plaintiffs' notice of the third-party action five months after it had been initiated was not timely under the policy.

Plaintiffs then commenced this action seeking a declaration that Liberty is obligated to provide them with coverage. Following discovery, Liberty moved for summary judgment declaring that it is not obligated to provide plaintiffs with coverage under the policy. It argued that plaintiffs did not qualify as additional insureds and that plaintiffs had failed to satisfy the notice of occurrence and notice of suit conditions in the policy.

Supreme Court denied Liberty's motion, holding that plaintiffs qualified as additional insureds under the policy (2014 NY Slip Op 33766[U] [2014]). The court found that the policy "requires only a written contract to which Samson is a party" and that this requirement was met by Samson's written contract with DASNY, which obligated Samson to procure insurance naming as additional insured "the Construction Manager (if applicable)" and that the JV was undisputedly the construction manager (*id.* at *5-6).

On the issue of late notice, the court found that there was no express provision in the policy requiring an additional insured to give notice to the insurer of an occurrence or a lawsuit, only a provision requiring the named insured to give notice; that, accordingly, plaintiffs could rely on Samson's notice of occurrence, particularly since their interests were not adverse to Samson's; and that plaintiffs' reason for delaying five months in providing notice of the third-party action—that they needed to find the policy—was reasonable. Ultimately, the court declared that the JV is an additional insured under the Liberty policy.

Discussion

In this action for a judgment declaring the parties' rights under an insurance policy, this Court must be guided by the rules of contract interpretation because "[a]n insurance policy

is a contract between the insurer and the insured" (*Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co.*, 53 AD3d 140, 145 [1st Dept 2008]). As a result, the extent of coverage "is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage" (*id.*; *see also Travelers Indem. Co. v American & Foreign Ins. Co.*, 286 AD2d 626, 626 [1st Dept 2001]).

"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies" (*State of New York v Home Indem. Co.*, 66 NY2d 669, 671 [1985]). "[W]ell-established principles governing the interpretation of insurance contracts . . . provide that the unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and that the interpretation of such provisions is a question of law for the court" (*Broad St., LLC v Gulf Ins. Co.*, 37 AD3d 126, 130-131 [1st Dept 2006]). "If, however, there is ambiguity in the terms of the policy, any doubt as to the existence of coverage must be resolved in favor of the insured and against the insurer, as drafter of the agreement" (*id.* at 131).

> "A contract of insurance is ambiguous if the language therein is susceptible of two or more reasonable interpretations, whereas, in contrast, a contract is unambiguous if the language has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*id.* [citations and internal quotations and marks omitted]).

In this case, the "Additional Insured—By Written Contract" clause of the CGL policy provides additional insured coverage to "any person or organization with whom you [Samson] have agreed to add as an additional insured by written contract." Contrary to Supreme Court's determination, and consistent with our prior decisions in *AB Green Gansevoort, LLC v Peter Scalamandre & Sons, Inc.* (102 AD3d 425 [1st Dept 2013]) and *Linarello v City Univ. of N.Y.* (6 AD3d 192 [1st Dept 2004]), we find that the language in the "Additional Insured—By Written Contract" clause of the Liberty policy clearly and unambiguously requires that the named insured execute a contract with the party seeking coverage as an additional insured. Since there is no dispute that Samson did not enter into a written

contract with the JV, Samson's agreement in its contract with DASNY to procure coverage for the JV is insufficient to afford the JV coverage as an additional insured under the Liberty policy.

*AB Green* and *Linarello* are instructive to the extent they interpreted additional insured provisions worded similarly to the one at issue here as requiring a written agreement between the insured and the organization seeking coverage as an additional insured. Most recently, in *AB Green*, this Court held that an owner does not qualify as an additional insured under a blanket additional insured endorsement when it did not have a direct contractual promise from the named insured to be given that status (102 AD3d 425). In *that case*, the plaintiff in the underlying action was injured at a construction site and sued AB Green as the property owner. The general contractor retained Scalamandre as a subcontractor and Scalamandre purchased concrete from Ferrara Brothers Building Materials Corp. pursuant to an unsigned purchase order.

Ferrara was insured by Liberty (defendant herein) under a commercial general liability policy. The policy contained a blanket additional insured endorsement that added an additional insured: "when you and such . . . organization have agreed in writing in a contract or agreement that such . . . organization be added as an additional insured on your policy" (*id.* at 426). The term "you" was defined in the policy as the named insured, Ferrara. Liberty argued that since AB Green did not produce any written agreement between itself and Ferrara naming AB Green as an additional insured, under the plain language of the policy, there was no question of fact whether an agreement existed between Ferrara and AB Green and thus AB Green was not an additional insured under the policy.

AB Green argued that the title of the endorsement, "Additional Insured—Owners, Lessees or Contractors—Automatic status when required in construction agreement with you," automatically conferred additional insured status upon AB Green when Ferrara entered into the purchase order with Scalamandre (*id.* at 427). This Court rejected that argument, reasoning that the title did not alter the substance of the endorsement. AB Green argued, in the alternative, that the terms of the policy itself were ambiguous because the policy could be read to mean that the named insured and the party seeking to be an additional insured only needed to enter into

written agreements with another party, not necessarily with each other. This Court rejected that argument as well, on the ground that this was not what the blanket endorsement provided.

In interpreting the additional insured provision literally—as requiring that there be a written agreement directly between the named insured and the putative additional insured—we relied on our prior decision in *Linarello* (6 AD3d 192), which involved the interpretation of an additional insured endorsement identical to the one contained in *AB Green*. In *Linarello* (6 AD3d 192), we affirmed an award of summary judgment declaring that two insurance carriers were not obligated to defend or indemnify a construction manager where their insureds had written contracts only with the site owner. We explained that the fact that the contracts between the site owner and insured subcontractors required them to name as additional insureds anyone designated by the site owner was of no moment given the policy's plain language. It simply meant that the putative third-party beneficiaries would have standing to sue for breach of the provisions in those contracts requiring that insurance be procured covering them as additional insureds.

Unlike the dissent, we are not persuaded by plaintiffs' argument that *Linarello* and *AB Green* can be distinguished because the additional insured clause in those cases involved language slightly different from than in the instant case. Plaintiffs contend that in those cases the conferral of additional insured status was "expressly limited" to cases "when you and such . . . organization have agreed in writing" that a party be named as an additional insured, whereas the "Additional Insured—By Written Contract" clause in the instant case does not include "any such explicit requirement of direct contractual relationship, only that Samson, as the named insured, agreed in writing to name the JV as an additional insured."

Plaintiffs' argument, however, distorts the plain language of the additional insured clause of the Liberty policy issued to Samson. Indeed, plaintiffs place undue emphasis on the phrase "by written contract" and completely ignore the inclusion of the words "with whom" as the object of the verb phrase "you agree." When "whom" is used as the object of a verb or preposition, it refers back to the person mentioned previously. In effect, when plaintiffs argue that the language in the Liberty policy is much

broader than the language in *AB Green* and *Linarello*, they want this Court to read the policy as extending coverage not only to those "with whom" Samson agreed, but also to those "for whom" Samson agreed to provide coverage. But when restricted to its plain meaning, the substance of this language is indistinguishable from the substance of the language of the policies in *Linarello* and *AB Green*, i.e., for an organization to be added as an additional insured, there must be a written agreement between the named insured and the organization seeking coverage (*see also Zoological Socy.*, 2014 WL 3748545, *7, 2014 US Dist LEXIS 105359, *13 [finding similar language "clearly and unambiguously require(d) that the named insured execute a contract with the party seeking coverage as an additional insured"]; *Murnane Bldg. Contrs.*, 33 Misc 3d 1215[A], 2011 NY Slip Op 51943[U]; *Best Buy*, 2009 NY Slip Op 30208[U]). That the additional insured clause could have been worded differently does not render it ambiguous or mandate that it must be construed in plaintiffs' favor (*Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 650 [2012]).

Plaintiffs further argue that the requirement that the construction manager be named as an additional insured is clear from Samson's contract, which states that the "Construction Manager (if applicable) and other entities specified on the sample Certificate of Insurance provided by the Owner" are to be named as additional insureds. Moreover, plaintiffs point out that the sample certificate of insurance identifies the JV as an entity to be named as an additional insured.

These arguments do not mandate a different result. The language in the Samson/DASNY agreement, including the sample certificate of insurance, may be evidence that Samson was required to provide the JV with coverage, but, as this Court noted in *Linarello*, all that means is that the JV may have a claim against Samson for breach of the contract's insurance provision. It does not mean that the policy issued by Liberty can be judicially rewritten to cover the JV (*Linarello*, 6 AD3d at 195).

The dissent's reliance on this Court's observations in *AB Green* about the holding in *American Home Assur.* (26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U] [2010]) is misplaced. To be sure, the "Additional Insured—By Written Contract" clause of the Liberty policy at issue here contains terms closely parallel-

ing those in the CGL policy in *American Home*,[2] which this Court cited in observing that "policies containing broader language have been found to allow for an agreement naming an additional insured without an express contract between the parties" (*AB Green*, 102 AD3d at 426).

However, contrary to the dissent's contentions, this Court's observations in *AB Green* about the policy language in *American Home* are not controlling in this case. Rather, they were simply meant to compare and dismiss the cited non-binding authority as distinguishable on the facts. They did not preclude the possibility that we would decide a case analogous to the facts in *American Home* differently if presented with the opportunity. The instant case presents us with that opportunity. Contrary to the suggestions of *American Home* and other cases similarly decided by trial courts (*see e.g. Plaza Constr. Corp.*, 2011 NY Slip Op 30709[U]), we find that the language in the analogous additional insurance clause of the instant Liberty policy clearly and unambiguously provides that for an entity to be included as an additional insured, it must have executed a contract with the named insured.

The dissent also argues that the additional insured provision at issue here "on its face is poorly drafted in terms of its syntax," and the dissent then proceeds to delete a word to arrive at the "plain and ordinary meaning" of the language. In our view, however, the grammatical gymnastics that the dissent engages in to create ambiguity fall short and distort what is actually in the text of the additional insured provision. The additional insured provision at issue here is clearly denominated "Additional Insured—By Written Contract" to indicate the manner in which the additional insured status is acquired, namely by written contract. The text of this provision then explicitly defines an additional insured (the who) to include "any person or organization *with whom* you [Samson] have agreed to add as an additional insured by written contract" (emphasis added). Given this context, the dissent ignores that the phrase "*with whom* you have agreed" is clearly intended to describe an entity contracting with Samsom, which is consistent with the additional modifier in the same sentence, "by written contract."

---

**2.** "The express language of the . . . policy extends coverage to 'any person or organization with whom you [the named insured . . .] have agreed in a written contract to provide insurance as is afforded under this policy' " (*American Home Assur.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U], *4).

Under the circumstances, it is evident that the dissent's strained interpretation of the words "with whom" is an improper attempt to rework the words' plain purpose. This runs counter to the bedrock principle of contract interpretation that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). Since the policy language at issue here is clear and unambiguous, we must give effect to the phrase "with whom" by employing its plain meaning. We must reject the dissent's attempt to give the contract a meaning beyond that expressed and to contemplate what the parties may have subjectively intended by certain terms. Therefore, contrary to the dissent's suggestion, we "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]).

Finally, the dissent's dire prediction that "the majority's unduly narrow reading of Liberty's policy provision on additional insureds would upend the established customs and practices of the construction industry" rings hollow. In fact, in this appeal, plaintiffs themselves do not urge upon us equitable considerations. They simply make an unalloyed contract interpretation argument, which we reject.

As the Court of Appeals has made abundantly clear, "[E]quitable considerations will not allow an extension of coverage beyond its fair intent and meaning in order to obviate objections which might have been foreseen and guarded against" (*Caporino v Travelers Ins. Co.*, 62 NY2d 234, 239 [1984]). Ultimately, the dissent's argument ignores the fact that courts "may not disregard clear provisions which the insurers inserted in the policies and the insured [here, a sophisticated business entity that presumably relied on experts to advise it] accepted" (*id.*).

Since plaintiffs were unable to meet the threshold burden of establishing that the JV is an additional insured under the Liberty policy (*see National Abatement Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 33 AD3d 570, 571 [1st Dept 2006]), there is no need to address their remaining argument as to whether, under the circumstances, the April 25, 2011 notice to Liberty of the third-party action constitutes timely notice of the occurrence and lawsuit.

Accordingly, the order of the Supreme Court, New York County (Anil C. Singh, J.), entered May 30, 2014, which denied the motion of defendant Liberty Insurance Underwriters for summary judgment declaring that plaintiff Gilbane Building Co./TDX Construction Corp., a joint venture, is not an additional insured under the policy issued by defendant to nonparty Samson Construction Company, and declared that plaintiff is an additional insured under the policy, should be reversed, on the law, defendant's motion granted, and the declaration vacated. The Clerk is directed to enter judgment declaring that plaintiff is not an additional insured under the subject policy.

KAHN, J. (dissenting). Because I believe that Supreme Court correctly denied defendant Liberty Insurance Underwriters's motion for summary judgment, I respectfully dissent.

I. Factual and Procedural Background

Plaintiff Gilbane Building Co./TDX Construction Corp., a joint venture (Gilbane),[1] was hired by nonparty Dormitory Authority of the State of New York (DASNY), as the owner's representative, to provide construction management services in connection with the construction of a new forensic biology center adjacent to Bellevue Hospital. The construction management agreement executed by Gilbane and DASNY on October 10, 2001 (the DASNY-Gilbane contract), provided that Gilbane, as "CONSTRUCTION MANAGER[,] be specifically included as an Additional Insured in all liability insurances furnished by each of the Prime Contractors to [DASNY]" (DASNY-Gilbane contract art XI [B]). The contract further provided that "[i]t shall be the responsibility of the CONSTRUCTION MANAGER to obtain a copy of each Prime Contractors [sic] Certificate of Insurance, in order to ensure that the CONSTRUCTION MANAGER is included as an additional insured thereunder" (id. art XI [D]). The contract also included a provision as to certificates of insurance. It stated: "Certificate(s) of Insurance, when submitted to the OWNER [DASNY], constitutes a warranty by the CONSTRUCTION MANAGER that the insurance coverage described is in effect for the policy term shown" (id. art IX [B]).

By separate contract dated January 11, 2002, nonparty Samson Construction Company agreed to perform services for

---

**1.** Plaintiffs Gilbane Building Company and TDX Construction Corporation are also respondents on this appeal.

DASNY as the prime contractor for excavation and foundation work on the project (the DASNY-Samson contract). Consistent with the terms of the DASNY-Gilbane contract, the DASNY-Samson contract required that Samson provide a commercial general liability (CGL) policy of insurance, which would include: "[an] [e]ndorsement naming the following as additional [insureds]: Dormitory Authority of the State of New York, The State of New York, the Construction Manager (if applicable) and other entities specified on the sample Certificate of Insurance provided by the Owner" (DASNY-Samson contract, General Conditions, § 15.01 [A] [2] [b]).

The sample certificate of insurance annexed to the DASNY-Samson contract states, in pertinent part:

"The following are Additional Insureds under General Liability as respects this Project: . . .

"Gilbane/TDX Construction Joint Venture."

Virtually the same language respecting certificates of insurance in DASNY's contract with Gilbane was included in the DASNY-Samson contract (DASNY-Samson contract, General Conditions, § 15.01 [B]).

Pursuant to this contract, Samson procured the CGL insurance policy from Liberty for the period November 12, 2002 through November 12, 2003 (Samson-Liberty policy), which is at issue here.

Endorsement No. 21 of the Samson-Liberty policy, entitled "Additional Insured—By Written Contract," provided:

"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you."[2]

The Samson-Liberty policy also required that in the event of an "[o]ccurrence, [o]ffense, [c]laim [o]r [s]uit," Liberty be notified "as soon as practicable." Endorsement No. 19 of the policy further provided, in pertinent part:

---

2. The Samson-Liberty policy states: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy" (Samson-Liberty policy at 1).

The sole named insured shown on the declarations page of the Samson-Liberty policy is Samson.

"[I]n the Event Of Occurrence, Claim Or Suit . . . :

"You [Samson] must give us prompt written notice [of:] . . .

"Any lawsuit or arbitration proceeding involving this policy brought against any insured. . . .

"In the event that you do not give us written notice within 30 days of the date you know or should have known of a claim or injury meeting one or more of the descriptions set forth . . . above, we shall have the option in our sole discretion to deny coverage under this policy if your failure to report any such loss has prejudiced our rights under this policy."

In 2003, Samson's excavation work at the project site allegedly caused adjacent buildings to sink, resulting in significant structural damage to those buildings. By letter dated May 19, 2003, Joseph V. Curcio, chief executive officer of Samson, forwarded to John J. McCullough, P.E., of Gilbane its actual certificate of insurance coverage listing the Samson-Liberty policy and expressly naming "Gilbane/TDX Construction Joint Venture" in its "Attached Descriptions" as an additional insured. Curcio's letter stated: "Attached, per your request of May 19, 2003, please find copies of current certificates of insurance for Samson Construction Company and Pile Foundation which should have been forwarded, previously, directly to you from the broker."

It appears from this correspondence that by requesting a copy of the certificate of insurance from Samson, Gilbane was endeavoring to establish its status as an additional insured under the Samson-Liberty policy for the purpose of fulfilling its responsibility under the DASNY-Gilbane contract, "in order to ensure that [it was] included as an additional insured thereunder" (DASNY-Gilbane contract art XI [D]).

In or about October 2003, Gilbane recommended a change order for Samson to receive compensation for extra work to stabilize one of the damaged buildings adjacent to the construction site (the C&D building). The change order was accepted by Samson and approved by DASNY.

In 2006, DASNY commenced an action seeking, inter alia, damages against Samson and Perkins Eastman Architects, P.C., the project architect, for negligence in performing the

excavation work (*see Dormitory Auth. of the State of N.Y. v Samson Constr. Co.*, 137 AD3d 433 [1st Dept 2016]). Gilbane was not named in the action.

By verified complaint filed December 15, 2010, Perkins Eastman commenced this third-party action against plaintiffs. By letter dated April 25, 2011, Gilbane provided notice of the third-party action to Liberty, seeking defense and indemnification for plaintiffs. By letter dated July 20, 2011, Liberty denied coverage to plaintiffs, stating that plaintiffs had provided no documentation that Samson was to defend and indemnify them and that, in any event, plaintiffs had failed to provide timely notice of the third-party action as required under the terms of the Samson-Liberty policy.

Plaintiffs then commenced the instant action seeking a declaration that Liberty is obligated to defend and indemnify them pursuant to the Samson-Liberty policy, as well as other forms of relief not at issue here. Following discovery, Liberty moved for summary judgment in its favor, arguing that Gilbane did not qualify as an additional insured under the terms of the policy and that, in any event, Gilbane had failed to satisfy the notice-of-occurrence and notice-of-suit conditions of the Samson-Liberty policy. The court denied Liberty's motion, ruling that the "additional insured" clause of the Samson-Liberty policy required only a written contract between Samson and another party committing Samson to the naming of "the Construction Manager (if applicable)" as an additional insured on the policy, and that Gilbane was indisputably the construction manager (2014 NY Slip Op 33766[U], *5-6 [2014]). On the notice issue, the court found that there was no express provision in the Samson-Liberty policy requiring an additional insured to provide notice to the insurer of an occurrence or lawsuit, that Gilbane could rely on Samson's notice of occurrence since Gilbane's interests were not adverse to Samson's, and that Gilbane had proffered an explanation for the five-month delay in providing notice "sufficient to demonstrate the existence of a question of fact whether [Gilbane] provided Liberty with notice of the suit as soon as practicable" (*id.* at *10). The court declared Gilbane to be an additional insured under the Samson-Liberty policy as a matter of law.

## II. Legal Standards

On a summary judgment motion in a case involving interpretation of an insurance contract or policy, the Court of Appeals has instructed:

"The objective in any question of the interpretation of a written contract, of course, is to determine what is the intention of the parties as derived from the language employed. At the same time the test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury. In general the courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments. This is obviously so where there is no ambiguity.

"If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury. On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973] [citations and internal quotation marks omitted]).

On a motion for summary judgment, "[t]he evidence will be construed in the light most favorable to the one moved against" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013], citing, inter alia, *Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296 [1998]). The insured, however, has the burden of showing that an insurance contract covers the loss for which the claim is made (*Kidalso Gas Corp. v Lancer Ins. Co.*, 21 AD3d 779 [1st Dept 2005]). Where an insurance company seeks summary judgment on a plaintiff's claim of coverage, the plaintiff's burden is "merely to raise a question of fact as to the coverage under the policy" (*id.* at 781). "If the terms of a policy are ambiguous . . . any ambiguity must be construed in favor of the insured and against the insurer" (*White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]). These standards are applicable to cases where the status of a party as an "additional insured," i.e., "an entity enjoying the same protection as the named insured," is at issue (*Pecker Iron Works of N.Y. v Traveler's Ins. Co.*, 99 NY2d 391, 393 [2003] [internal quotation marks omitted]).

## III. The "Additional Insured" Endorsement

The central issue presented on this appeal is whether Gilbane is entitled to coverage as an "additional insured" under

the Samson-Liberty policy. Applying the *Wesolowski* standards, I find that whether the intent of the parties to that contract of insurance is deemed discernable from the language employed or is deemed ambiguous, that language does not support Liberty's denial of coverage here.

Our starting point is the "sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language," i.e., within "the four corners of the document" (*R/S Assoc. v New York Job Dev. Auth.*, 98 NY2d 29, 32, 33 [2002]). Thus, the meaning of the "additional insured" endorsement of the Samson-Liberty policy must be discerned from the terms of the endorsement itself, if that is possible, and not based upon the requirements of extrinsic trade contracts between the parties (*see Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co.*, 53 AD3d 140, 145 [1st Dept 2008]; *Travelers Indem. Co. v American & Foreign Ins. Co.*, 286 AD2d 626 [1st Dept 2001]). Where the policy itself requires consideration of the underlying contractual arrangements, however, such reference must be made (*see Bovis* at 145).[3]

## A. Express Policy Terms

In the instant case, if the language of the "additional insured" policy endorsement is deemed to be unambiguous, it must be interpreted in accordance with its "plain and ordinary meaning" (*Lavanant v General Acc. Ins. Co. of Am.*, 79 NY2d 623, 629 [1992]). In interpreting the policy, the court may not engage in a judicial rewriting of its language (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257, 265 [2011]). Rather, the responsibility of the court is to discern, based upon the language used, the intent of the parties.

Liberty's "additional insured" endorsement on its face is poorly drafted in terms of its syntax (defining "additional insured" as "any person or organization with whom you have agreed to add as an additional insured by written contract"), in that the word "whom" is the object both of the preposition "with" and of the infinitive "to add." To make the parties' intent

---

**3.** Indeed, in *Bovis*, this Court distinguished *Pecker Iron Works* (99 NY2d 391), observing that there, the insurance policy made specific reference to the underlying subcontract's insurance procurement provisions as being dispositive of the scope of coverage, while the insurance contract in *Bovis* did not include in its applicable definitions any such reference (*Bovis*, 53 AD3d at 145-147).

clear, the language should be read without the unnecessary preposition "with," i.e., "any . . . organization . . . whom you have agreed to add as an additional insured by written contract." Read in this manner, the Samson-Liberty policy would be understood to cover any party the policyholder agreed by written contract to cover. This reading appears to best reflect the intent of the parties, since the alternative, i.e., reading the language without the verb "to add," would make no sense, and an insurance policy "must be construed reasonably and . . . must be given a practical construction" (*Matza v Empire State Mut. Life Ins. Co.*, 50 AD2d 554, 555 [1st Dept 1975]).[4]

By entering into just such a written contract with the property owner, DASNY, which included an agreement that Samson would obtain a CGL policy naming Gilbane as an additional insured, Samson both triggered the provisions of the "additional insured" endorsement of the Samson-Liberty policy, requiring the referencing of such written contracts for the determination of available coverage for additional insureds (*see Pecker Iron Works*, 99 NY2d at 393-394), and acted in conformity with those terms.

The plain and ordinary meaning of the language chosen by Liberty for the "additional insured" endorsement at issue here is made even more apparent when it is contrasted with the language used in the "additional insured" endorsements at issue in our decisions in *AB Green Gansevoort, LLC v Peter Scalamandre & Sons, Inc.* (102 AD3d 425, 426 [1st Dept 2013] ["when you *and such . . . organization* have agreed in writing in a contract or agreement that such . . . organization be added as an additional insured on your policy" (emphasis added)]),[5] and *Linarello v City Univ. of N.Y.* (6 AD3d 192 [1st

---

**4.** In *Bovis* (53 AD3d 140), this Court, in discussing *Pecker Iron Works* (99 NY2d 391), recognized that in *Pecker*, where the policy in question provided that coverage for additional insureds under a subcontractor's policy would be excess unless the insured subcontractor "agreed in a written contract for this insurance to apply on a primary or contributory basis," the Court of Appeals interpreted the policy language as the insurer having " 'agreed to provide primary insurance *to any party with whom [the subcontractor] had contracted in writing* for insurance to apply on a primary basis' " (*Bovis*, 53 AD3d at 145-146 [emphasis added], quoting *Pecker*, 99 NY2d at 393, 394).

**5.** In *AB Green*, this Court, in construing this language, noted that "policies containing broader language have been found to allow for an agreement naming an additional insured without an express contract between the parties" (102 AD3d at 426, citing *American Home Assur. Co. v Zurich Ins. Co.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U], *4-5 [Sup Ct, Kings County

Dept 2004]),[6] upon which the majority relies.[7] In each of those cases, this Court found that a written contract between the named insured and the putative additional insured was required by the plain and ordinary meaning of the language at issue. "[W]hen you and such . . . organization have agreed" is not the language chosen by Liberty for use in its policy's "additional insured" endorsement in this case, however, and its chosen clause imposes no such requirement (see n 3, supra).[8]

Thus, reading the policy according to its terms, the plain and ordinary meaning of the language of the "additional insured" endorsement in this case, as held by the motion court, is that although the policyholder, Samson, was required to enter into a written contract in which it agreed to add Gilbane as an additional insured, it was not required to enter into that written contract with Gilbane itself (see *Liberty Mut. Fire Ins. Co. v Zurich Am. Ins. Co.*, 2016 WL 452157, *2, 2016 US Dist LEXIS 13604, *4-5 [SD NY, Feb. 4, 2016, Crotty, J., No. 14 Civ 7568 (PAC)]).

The majority, however, reads the language of the "additional insured" clause as requiring a contract between Samson and Gilbane in order for the latter to qualify as an additional

---

2010] [construing "any person or organization with whom you (the named insured . . . ) have agreed in a written contract to provide insurance as is afforded under this policy" as not "limit(ing) coverage to only the person or organization with whom . . . the named insured . . . contracted"]). As the majority and I agree, this case presents just that situation, which was reserved by this Court in *AB Green*. The majority, however, now rejects any such distinction and announces that both types of clauses should be interpreted to require privity of contract between the named insured and the putative additional insured. That conclusion departs not only from the plain language of the insurance clause at issue here, but also from this Court's own precedent in *Bovis* (see n 3, supra).

**6.** The language of the additional insured policy endorsement in *Linarello*, as quoted in *American Home Assur. Co. v Zurich Ins. Co.* (26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U], *5 [Sup Ct, Kings County 2010]), is the same as the additional insured policy endorsement language in *AB Green*.

**7.** Apparently, the language used in the "additional insured" endorsements in both of those cases was derived from the form of "additional insured" endorsement drafted by the Insurance Services Office (ISO) and in effect at the time that the Samson-Liberty policy was issued. That ISO form defined "additional insured" as: "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy" (ISO Form CG 20 33 10 01 [2000], available at www.certifiedriskmanagers.com/CG%2020%2033%2010 %2001.pdf [accessed June 15, 2016]).

**8.** The decision by Liberty to employ differing language in its CGL policy in *AB Green* bespeaks a different intention as to its policy in this case.

insured under the terms of the Samson-Liberty policy. Even under that reading, however, the record establishes that Samson complied with its terms and that Gilbane is entitled to coverage. Contrary to the majority's view, Samson's May 19, 2003 letter to Gilbane forwarding its actual certificate of insurance clearly manifested the written agreement of Samson and Gilbane, as well as Liberty and DASNY, that Gilbane be an additional insured under the Samson-Liberty policy.

In sum, if the language of the Samson-Liberty policy "additional insured" endorsement is viewed as unambiguous and is interpreted according to its terms, under either my own or the majority's reading, the motion court correctly determined that Gilbane is an "additional insured" entitled to coverage under the express terms of the Samson-Liberty policy.[9]

## B. Interpretation of Ambiguous Language

"Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation" (*Brad H. v City of New York*, 17 NY3d 180, 186 [2011]). Here, in my opinion, the better view is that the policy language in question was written so imperfectly that it is susceptible of two reasonable interpretations. Proof of that is found not only in the poor syntax of the clause itself, but also in the fact that some courts have held, as did the motion court in this case, that the written contract mentioned in this clause need not have been entered into by the policyholder and the putative additional insured, while others have taken the position that privity of contract is required between the named insured and any party claiming the status of additional insured (*compare Liberty Mut. Fire Ins. Co. v Zurich Am. Ins. Co.*, 2016 WL 452157, \*1, 2016 US Dist LEXIS 13604, \*3 ["(a)ny person or organization with whom you have agreed, through written contract, agreement or permit, executed prior to the loss, to provide additional insured coverage"]; *Plaza Constr. Corp. v Zurich Am. Ins. Co.*, 2011 NY Slip Op 30709[U], \*4 [Sup Ct, NY County 2011] ["(a)ny person or organization with whom you (the named insured) have agreed, through written contract, agreement or permit to provide primary additional insured

---

**9.** Although no summary judgment motion was made by Gilbane, the motion court searched the record and granted summary judgment to Gilbane on this issue. Reading the "additional insured" clause of the Samson-Liberty policy as unambiguous, this grant of summary judgment was appropriate (*see Wesolowski*, 33 NY2d at 171-172).

coverage"]; *American Home Assur. Co. v Zurich Ins. Co.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U], *4 [Sup Ct, Kings County 2010] ["any person or organization with whom you (the named insured . . . ) have agreed in a written contract to provide insurance as is afforded under this policy"] [all interpreted as not imposing any requirement of privity of contract between the named and additional insureds]; *and Aetna Cas. & Sur. Co. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 228 AD2d 385, 386 [1st Dept 1996] [coverage upheld on other grounds under clause stating, "(A)ny entity to whom or to which the Named Insured . . . is obligated by virtue of a written contract, is hereby included as an additional insured"]; *with Zoological Socy. of Buffalo, Inc. v CarvedRock, LLC*, 2014 WL 3748545, *1, 2014 US Dist LEXIS 105359, *3 [WD NY, July 29, 2014, No. 10-CV-35-A (Sr)] [policy language defining "additional insured" as "(a)ny person or organization with whom (the named insured) ha(s) agreed, in a written contract, that such person or organization should be added as an insured on (the named insured's) policy"]; *AB Green*, 102 AD3d at 426 ["when you *and such . . . organization* have agreed in writing in a contract or agreement that such . . . organization be added as an additional insured on your policy"]; *Linarello*, 6 AD3d at 195; *Murnane Bldg. Contrs., Inc. v Zurich Am. Ins. Co.*, 33 Misc 3d 1215[A], 2011 NY Slip Op 51943[U], *3 [Sup Ct, Suffolk County 2011] ["(a)ny person or organization with whom you have agreed, through written contract, agreement or permit . . . to provide primary additional insured coverage"], *revd on other grounds* 107 AD3d 674 [2d Dept 2013]; *Best Buy Co., Inc. v Sage Elec. Contr., Inc.*, 2009 NY Slip Op 30208[U] [2009], *6 [Sup Ct, NY County 2009] ["(a)ny person or organization with whom you have entered into a written contract, agreement or permit requiring you to provide insurance such as is afforded by this (CGL) Coverage Form will be an additional insured"] [all interpreted as requiring privity of contract between the named insured and the additional insured]). These decisions make clear, even if the differing language of these clauses is viewed as legally inconsequential,[10] as the majority views it, that the courts that have considered

---

**10.** It appears, however, that the majority of the courts that have considered language similar to that of the "additional insured" clause in the instant case have reached the conclusion that it does not require a written contract between the named insured and the additional insured (*see Liberty Mut. Fire Ins. Co. v Zurich Am. Ins. Co.*, 2016 WL 452157, *2, 2016 US Dist LEXIS 13604, *4-5; *American Home Assur. Co. v Zurich Ins. Co.*, 26 Misc 3d

the "additional insured" provisions at issue have reached differing conclusions as to their proper interpretation. As the language in question in the Samson-Liberty policy is, at the very least, "susceptible to more than one reasonable interpretation," it is properly treated as ambiguous (*Brad H.*, 17 NY3d at 186), and reference may be had to extrinsic evidence to determine the parties' intent (*see Wesolowski*, 33 NY2d at 171-172).

All the extrinsic proof supports finding that Gilbane is an additional insured under the Samson-Liberty policy. The DASNY-Samson contract and the sample certificate of insurance annexed to it name Gilbane as an additional insured. The DASNY-Gilbane contract required Gilbane to obtain a certificate of insurance from each of the prime contractors on the job to evidence that status, and the May 19, 2003 letter from Samson's chief executive officer to Gilbane transmitting the actual certificate of insurance did exactly that.[11] This evidence presents, at least, a triable issue of fact as to the existence of a "written contract"—indeed, one between Gilbane and Samson— that Gilbane be deemed an additional insured under the Samson-Liberty policy and Liberty's consequent duty is to defend and indemnify it in the underlying action.

Furthermore, the record of the conduct of the parties shows that no challenge was raised to Gilbane's status as an additional insured by any party from the time of issuance of the Samson-Liberty policy in 2002 until Liberty disclaimed coverage in July 2011. Indeed, DASNY would have deemed Samson to be in breach of its contract with DASNY had DASNY not

1223[A], 2010 NY Slip Op 50237[U], *4; *but see Zoological Socy. of Buffalo, Inc. v CarvedRock, LLC*, 2014 WL 3748545, *7, 2014 US Dist LEXIS 105359, *13 [reading similar language as requiring contractual privity between named insured and additional insured]). The instant language is even less ambiguous than that considered by other courts in suggesting that there is no requirement of privity between the named insured and the additional insured.

11. While a certificate of insurance is not "conclusive proof, *standing alone*," of a contract to insure a party, it is "evidence of a carrier's intent to provide coverage" (*Tribeca Broadway Assoc. v Mount Vernon Fire Ins. Co.*, 5 AD3d 198, 200 [1st Dept 2004] [emphasis added]). In any event, the Samson-Liberty policy's "additional insured" clause references other written contractual agreements to name additional insureds as binding the carrier to provide coverage (*see Pecker Iron Works*, 99 NY2d 391). Viewed together with the May 19, 2003 correspondence transmitting the certificate of insurance and the certificate of insurance clauses in the DASNY-Samson and DASNY-Gilbane trade contracts, this evidence raises a factual issue as to whether Gilbane is entitled to coverage under the Samson-Liberty policy.

understood that Gilbane and the other entities named in the sample and actual certificates of insurance, including DASNY itself, were covered under the "additional insured" clause of the Samson-Liberty policy.

Beyond this, the majority's unduly narrow reading of Liberty's policy provision on additional insureds would upend the established customs and practices of the construction industry and its insurers, as reflected in the contractual record in this case and others involving similar policy language (*see e.g. Liberty Mut. Fire Ins. Co. v Zurich Am. Ins. Co.*, 2016 WL 452157, *1, 2016 US Dist LEXIS 13604, *3; *Zoological Socy. of Buffalo, Inc. v CarvedRock, LLC*, 2014 WL 3748545, *1, 2014 US Dist LEXIS 105359, *3; *Plaza Constr. Corp. v Zurich Am. Ins. Co.*, 2011 NY Slip Op 30709[U], *4; *American Home Assur. Co. v Zurich Ins. Co.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50237[U], *4). Under the majority's view, in such cases, owners and their contractors will not be able to establish coverage for intended additional insured partners in construction projects, such as construction managers, subcontractors and any other entities named by owners, despite their having been listed on the certificates of insurance issued by the agents of the carriers as contemplated in their trade contracts. And new burdens will be placed on general contractors to devise and execute separate side contracts with each party required by the owner to be named as an additional insured on the contractor's CGL policy, with the concurrence of the insurance carriers, notwithstanding the accepted course of dealing in the construction and insurance industries, the clear terms of the contract between the owner and the general contractor so providing, or the prior issuance of certificates of insurance on behalf of the carriers themselves acknowledging and naming such parties as additional insureds. Under the majority's view, this would be so regardless of the language employed by a carrier in its additional insured clause.

Even if the extrinsic evidence does not conclusively establish Gilbane's entitlement to coverage, considered in accordance with the *Wesolowski* standard and viewed in the light most favorable to Gilbane as the non-moving party, and with any ambiguities resolved in favor of Gilbane, as the insured, the extrinsic evidence in this case is sufficient, at the very least, to raise a triable issue of fact as to whether Gilbane was made an "additional insured" under the terms of the Samson-Liberty policy and to defeat Liberty's motion for summary judgment (*see Kidalso Gas Corp. v Lancer Ins. Co.*, 21 AD3d at 781).

The majority's reliance on *AB Green* is misplaced. At the outset, the language in the "additional insured" clause in *AB Green* required that the policyholder add an organization as an additional insured "when you and such . . . organization have agreed in writing" that the policyholder do so (102 AD3d at 426), while the Samson-Liberty policy requires only that the policyholder add as additional insured "any . . . organization . . . [it has] agreed to add . . . by written contract."

The majority apparently acknowledges that in *AB Green*, this Court distinguished language such as the "additional insured" clause here from the language in *AB Green*, yet now jettisons that distinction and construes both clauses identically. This view is erroneous not only under the settled principles of contract interpretation already discussed, but also given the disparate factual scenarios here and in *AB Green*.

In *AB Green*, the plaintiff in the underlying action was injured while working on a construction site owned by AB Green, and brought suit against AB Green. AB Green sought defense and indemnification from the insurance carrier of the concrete supplier to a subcontractor working under the general contractor hired by AB Green. In that case, AB Green, as owner, had no connection whatsoever to the concrete supplier, whose only contractual relation to any of the parties was by a purchase order from the subcontractor. Not only was there no written contract between the concrete supplier and the owner agreeing to designate the latter as an additional insured on its liability policy, there also was no documentation of any sort suggesting that the owner or any party with whom it contracted ever contemplated its being provided insurance coverage by any product supplier to any of the subcontractors working for its general contractor. The facts of *AB Green* stand in stark contrast to those here, where the owner, construction manager, prime contractor, and the prime contractor's insurance carrier all agreed that the construction manager would be a named insured on the CGL policy of the prime contractor and that its status as such would be demonstrable by presentation of a certificate of insurance so stating.

While there certainly may be some cases, such as *AB Green*, in which parties wrongfully attempt to obtain insurance coverage to which they are not entitled from third parties to whom they have little or no relation, that does not require this Court to upend established courses of dealing by the construction industry and its insurers by precluding coverage at least argu-

ably believed to exist by all parties, and validly negotiated by them, based on the facts presented. The majority's construction of the language in question in this case would do just that, however, in derogation of construction industry custom and practice and the expectations of the insurance industry itself.[12]

Finally, the majority would limit Gilbane's avenue for relief to a breach of contract claim against Samson. However, the record is one of clear expectations and resultant compliance between and among an owner, construction manager, prime contractor, and the prime contractor's CGL primary carrier. There appears to be no ground for a breach of contract claim, since the parties' conduct and course of dealing demonstrate their intent that Gilbane be an additional insured under the Samson-Liberty policy and that all of the steps required to achieve that result were, in fact, taken. Thus, all the parties fulfilled their obligations to one another under both the Samson-Liberty policy and the trade contracts. Certainly, since the evidence, at minimum, raises a triable issue of fact as to whether Gilbane was named as an additional insured, the appropriate remedy is to remand the matter to Supreme Court for a jury determination of that issue, rather than for this Court to rewrite the policy in question and ignore the course of dealing among the parties.

Accordingly, I would affirm the order of Supreme Court denying Liberty summary judgment on this issue.

IV. Notice of Occurrence and Claim

Liberty further claims that Gilbane failed to provide it with proper notice of both the occurrence and the claim.

At the outset, the Samson-Liberty policy has no provision for notice requirements applicable to additional insureds. Rather, the notice requirements apply solely to "you" (*see* Samson-Liberty policy § IV [2] [a] ["You must see to it that we (Liberty) are notified as soon as practicable"]; endorsement No. 19 ["You must give us (Liberty) prompt written notice"]). By the Samson-Liberty policy's own terms, " 'you' . . . refer[s] to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy" (Samson-Liberty policy at 1). The sole organization appearing on the declarations page as the named insured and qualified to

---

12. An affiliate of Liberty was the successful plaintiff in *Liberty Mut. Fire Ins. Co. v Zurich Am. Ins. Co.* (2016 WL 452157, *2-3, 2016 US Dist LEXIS 13604, *4-7), raising the same arguments Gilbane asserts here as to another carrier's very similar policy language.

be the named insured under the Samson-Liberty policy is Samson. Thus, as to notice requirements applicable to additional insureds, the Samson-Liberty policy is silent. As this Court has stated, "[W]here the policy is silent, the law implies a duty to give timely notice within a reasonable time" (*Thomson v Power Auth. of State of N.Y.*, 217 AD2d 495, 496 [1st Dept 1995] [emphasis omitted]).

## A. Notice of Occurrence

Regardless of the extent to which the notice requirements language of the Samson-Liberty policy govern Gilbane as an additional insured, the evidence shows that Liberty had notice of the occurrence underlying this case well before the commencement of the third-party action against Gilbane in December 2010 and the transmittal of the letter from Gilbane notifying Liberty of that action in April 2011. Liberty likely had notice of the situation when it occurred in 2003, but certainly knew of it by 2006, when its named insured, Samson, was sued by Perkins Eastman.

## B. Notice of Claim

With respect to Gilbane's notice to Liberty of the third-party claim against it, what constitutes a "reasonable time" for notice under the *Thomson* standard must be examined under the totality of the circumstances. By the time it was brought into the action in 2010, Gilbane's work on the project had ended. Gilbane's uncontroverted explanation that an extensive search of documents previously sent to storage was necessary to locate the certificate of insurance and that it did not possess a copy of the Samson-Liberty policy, raises questions of fact as to the reasonableness of its delay in providing notice.

Moreover, there are two exceptions to the notice requirement which apply in this case. The first is that where the interests of the named insured and the additional insured are not adverse to each other, the notice of suit provided by one may be imputed to the other (*see National Union Fire Ins. Co. of Pittsburgh v Insurance Co. of N. Am.*, 188 AD2d 259, 261 [1st Dept 1992], *lv denied* 81 NY2d 709 [1993]).

The interests of Samson and Gilbane were in no sense adverse to each other, but were aligned throughout the relevant time period beginning in 2003. It was not Samson that brought Gilbane into the case, but Perkins Eastman, the architectural firm. Nor does the 2003 change order defeat the application of

this exception to the notice requirement to Gilbane, as Samson's and Gilbane's interests were congruent when Gilbane recommended to DASNY that it approve Samson's request for compensation for its extra work in stabilizing the adjacent C&D building. Samson accepted Gilbane's recommendation, and DASNY approved it. Moreover, there have been no cross claims asserted in the underlying action between Samson and Gilbane. Accordingly, Samson's notice to Liberty may be deemed notice from Gilbane as well.

The second exception to the notice requirement is that an insured's failure to give timely notice may be excused by the insured's good faith belief in its own nonliability (*see Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 441 [1972]). The affidavit by James H. Jones, president of plaintiff TDX Construction Corp., in opposition to Liberty's summary judgment motion maintained that Gilbane's role was as a "Construction Manager not at-risk." That claim finds support in the fact that for seven years after the occurrence, and for four years after the commencement of the suit against Samson, no claim of liability was asserted against Gilbane. Accordingly, this undisputed evidence raises triable issues of fact as to whether Gilbane had a good faith belief in its nonliability and whether five months after commencement of the third-party action constituted a reasonable time for Gilbane's notice to Liberty.

In sum, Liberty failed to demonstrate its entitlement to summary judgment. I would affirm the order of the motion court.

Sweeny, J.P., Saxe and Gische, JJ., concur with Renwick, J.; Kahn, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered May 30, 2014, reversed, on the law, the motion of defendant Liberty Insurance Underwriters granted, and the declaration vacated. The Clerk is directed to enter judgment declaring that plaintiff Gilbane Building Co./TDX Construction Corp., a joint venture, is not an additional insured under the subject policy.